**CABLE ELECTRIC PRODUCTS, INC., Appellant,**

**v.**

**GENMARK, INC., a/k/a Diablo Products Corp., Appellee.**

Appeal No. 84–1412.

United States Court of Appeals, Federal Circuit.

Aug. 9, 1985.

Paul J. Sutton, New York City, argued for appellant. With him on the brief were Barry G. Magidoff and Anthony Amaral, Jr.

Alan H. MacPherson, Skjerven, Morrill, MacPherson, Franklin & Friel, San Francisco, Cal., argued for appellee. With him on the brief were Thomas J. Friel, Jr. and Doniel E. Weil.

Before BENNETT, Circuit Judge, MILLER, Senior Circuit Judge,* and SMITH, Circuit Judge.

BENNETT, Circuit Judge.

## I. BACKGROUND

This is an appeal from the United States District Court for the Northern District of California[1] which through its grants of summary judgment favorable to defendant Genmark, Inc. (Genmark), on February 29, 1984,[2] and May 25, 1984,[3] rendered a final judgment in Civil Docket No. C–83–0897–WWS, an action for patent infringement, federal false designation of origin, state unfair competition, and state trademark infringement.

The original complaint in this action was filed February 25, 1983, and accused Genmark of infringement of United States Patent No. 4,343,032 issued to Frederic W. Schwartz (the Schwartz patent) and owned by plaintiff Cable Electric Products, Inc. (Cable). The Schwartz patent relates to a photosensitive electric lamp able to turn itself on by degree as ambient light diminishes. As illustrated in Fig. 1 from the Schwartz patent, appearing below with unnecessary reference characters omitted, such a lamp includes a housing 10 which supports a light bulb 18 enclosed by a removable translucent shade 24. A lens 12 on the front of housing 10 permits ambient light to reach electrical circuitry and effect the operation described above. The device obtains power from a conventional electric wall receptacle through a pair of contact blades 14 at the rear of housing 10.

FIG. 1

On October 11, 1983, Genmark filed a first motion for summary judgment. The following day Cable moved for leave to amend its complaint to include, in addition to the patent count already joined, three others not based on any patent. The re-

---

* The Honorable Jack R. Miller assumed senior status effective June 6, 1985.

1. The Honorable William W. Schwarzer, District Judge.

2. 582 F.Supp. 93, 223 USPQ 287.

3. 586 F.Supp. 1505, 223 USPQ 291.

quested leave to amend was granted November 17, 1983. Subsequently, Genmark's first motion for summary judgment as to the patent count was granted. Thereafter, on April 24, 1984, Genmark made a second motion for summary judgment, this time as to the three counts added to the litigation by the amended complaint. The second motion was also granted, and the present appeal resulted.

We affirm the grant of summary judgment as to the patent infringement count, vacate the grant of summary judgment as to the nonpatent counts, and remand these for further appropriate deliberations.

The judgments will be reviewed below in the order granted.[4]

## II. THE PATENT COUNT

The district court dealt with the Genmark motion for summary judgment on the patent infringement count of the original complaint of Cable Electric in a Memorandum of Opinion and Order dated February 29, 1984 (the patent opinion)[5]. There it stated, "[T]he Court finds that, although defendant cannot establish that its device does not infringe plaintiff's patent, defendant does meet its burden of proof in establishing the obviousness of plaintiff's claimed invention under 35 U.S.C. § 103 without raising a genuine dispute of material fact." The Genmark motion was accordingly granted, and the Schwartz patent invalidated.

Cable Electric attacks that judgment scattershot fashion with a laundry list of objections which fall into the two general areas of inquiry suggested by Fed.R.Civ.P. 56(c),[6] namely, (1) the existence of genuine issues of material fact and (2) the entitlement of the movant to judgment as a matter of law. In the former category, it is asserted that the obviousness standard used by the district court evidences a level of uncertainty which implies the existence of genuine issues of material fact, and that affidavits or deposition testimony submitted in opposition to the summary judgment motion raise contested issues of material fact with regard to the scope and content of the prior art, the differences between that art and the claims at issue, the commercial success of the product embodying those claims, and the copying of that product by Genmark as demonstrating nonobviousness. It is asserted that the evidence on these issues was not viewed in a light most favorable to Cable, the opponent of summary judgment.

Regarding the law employed, Cable contends that the district court erred in that it shifted the burden of persuasion on invalidity, failed to determine that the art relied on to invalidate the Schwartz patent was more pertinent than that considered during prosecution, did not specifically indicate the combination of teachings that would yield the claimed invention, gave inadequate consideration to commercial success and copying as secondary indicia of nonobviousness, and applied an incorrect obviousness standard, which included, among other alleged

---

**4.** The discussion to follow can be summarized in outline form, which for the convenience of the reader is provided below:

I. BACKGROUND
II. THE PATENT COUNT
 A. Summary Judgment
 B. Harmful Error
 C. Burdens of Proof
 D. Prior Art
 E. Hodgetts Declaration
 F. Secondary Factors
 1. Commercial Success
 2. Product Copying
 G. Disposition
III. THE NONPATENT COUNTS
 A. Lanham Act
 B. State Causes of Action
 1. Choice of Law
 2. Preemption
 3. Disposition
IV. CONCLUSION
 APPENDIX

**5.** *See supra* note 2.

**6.** Fed.R.Civ.P. 56(c) states in relevant part:
"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

deficiencies, a failure to consider the claimed invention as a whole.

We find these assertions individually and collectively to be without merit. The patent opinion of the district court is well reasoned and, in light of the record upon which it is based, adequate, accurate, and amply justified. The following discussion substantiates our conclusion.

### A. *Summary Judgment*

Some comments on the use and appellate review of summary judgment are required to provide a frame of reference for a discussion of the record.

■ A number of objections by Cable are essentially complaints that the district court did not adequately amplify its reasoning and the underlying factual inferences on which it relied in granting summary judgment. Fed.R.Civ.P. 56(c), however, makes it clear that the circumstances in which a grant of summary judgment is proper are circumstances in which a district court need not function as an arbiter among differing versions of every factual reality for which evidentiary support has been presented. Instead, the circumstances appropriate to summary judgment are those in which a district court is able to conclude that, with regard to any factual issues material to granting judgment as a matter of law, no genuine dispute exists. Thus, it manifests incorrect expectations to fault a district court in granting summary judgment for a failure to find particular facts. To engage in fact finding would be not only inappropriate, but would per se

imply the impropriety of the grant. *See Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260–61, 225 USPQ 697, 700–01 (Fed.Cir. 1985).

Additionally, although Fed.R.Civ.P. 52(a) provides that a "court shall find the facts specially and state separately its conclusions of law thereon," the rule contains the pertinent qualification that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56." *Accord Helena Rubinstein, Inc. v. Bau*, 433 F.2d 1021, 1024, 167 USPQ 711, 713 (9th Cir.1970); *Fromberg, Inc. v. Gross Manufacturing Co.*, 328 F.2d 803, 806, 140 USPQ 641, 643 (9th Cir.1964). An exception, which we do not consider to be applicable here, can be found in Fed.R. Civ.P. 56 in the case of grants of partial summary judgment.[7] Assuredly, to know the reasoning a district court used in deciding to grant summary judgment facilitates the task of a reviewing court, and there does exist a risk in complicated cases of an unnecessary reversal if the logic that resulted in a grant of summary judgment cannot be discerned. *See Petersen Manufacturing Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1546, 222 USPQ 562, 566 (Fed.Cir.1984). Nevertheless, in light of the record before us and the patent opinion of the district court, the issues in this case present no such degree of complexity as would preclude affirmance, due to any failure of the district court to make the basis of its holding clear.

Thus, the complaint of Cable as to the insufficiency of "the factual findings of the

7. Fed.R.Civ.P. 56(d) states:

"*Case Not Fully Adjudicated on Motion.* If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the

trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

While the patent decision of the district court did not immediately dispose of "the whole case" brought by Cable, within 3 months a second order of summary judgment had decided the balance of the case. Consequently, no trial has proved necessary. As both summary judgment orders are before us in this appeal, and as the parties have not premised any arguments upon the fact that the initial, patent opinion was "not rendered upon the whole case," we view the exception of Fed.R.Civ.P. 56(d) as not applicable in any way here to increase the duty of the district court to find facts specially.

District Court on the scope and content of the prior art [or] ... the differences between the prior art and the claims at issue" is unpersuasive for at least three reasons. First, the presence of findings would signal the possible existence of disputed issues of material fact, none of which we discern to exist. Second, there is no legal requirement that the rationale behind a nonpartial grant of summary judgment, including a recitation of undisputed factual inferences and applications of legal principles, be made explicit. The only requirement in this regard is pragmatic, with an eye toward judicial economy and communication with the litigants. Finally, in this instance, the premise underlying the argument is simply incorrect. Contrary to the hyperbole of Cable, the patent opinion of the district court evidences that it considered and, in view of the straightforward nature of this case, adequately discussed the issues involved.

■ On this basis, we also dispose of the charge by Cable that the district court "failed to make a factual determination as to whether any of these [prior art patent] references were or were not more pertinent than the art considered by the Patent and Trademark Office during the prosecution of the patent-in-suit." Cable cites *Jones v. Hardy*, 727 F.2d 1524, 1529, 220 USPQ 1021, 1025 (Fed.Cir.1984), as condemning the omission of such a determination. Nevertheless, in *Jones* the appeal was from a judgment rendered after a 2-day trial, rather than one from summary judgment, and the failure of the lower court opinion to contain a *factual* determination as to pertinency was but one of many, more major flaws in the obviousness analysis cited by this court in reversing a conclusion of invalidity. The analysis faulted in *Jones* included, for example, a denial of the "statutory presumption of validity and an impermissible burden-shifting," *id.*, which, as will be discussed below, did not occur here. *Cf. King Instruments Corp. v. Otari Corp.*, 767 F.2d 853, 857, 226 USPQ 402, 404 (Fed.Cir.1985) (referring to the failings

in the *Jones* analysis as a "parade of horrors"). A determination on pertinency may in some cases afford insight into the reasoning of the factfinder, but it is not strictly a requirement under *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966), for a proper obviousness analysis.

Review of the grant of summary judgment at issue then first requires review of the evidence relevant to the factual inquiries of *Graham*, including evidence relevant to the secondary considerations, in order to determine whether any genuine issue exists as to facts material to reaching a conclusion on obviousness. *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679, 223 USPQ 1286, 1287–88 (Fed.Cir.1984). If not, and if viewing that evidence in a light most favorable to the nonmovant and drawing in favor thereof all inferences as are reasonable, the moving party is entitled to judgment as a matter of law, the grant of summary judgment will be affirmed. *Id.* at 679, 223 USPQ at 1288.

### B. *Harmful Error*

■ In such analysis as Cable is willing to acknowledge was included by the district court in its patent opinion, several errors are alleged. Nevertheless, as obviousness under 35 U.S.C. § 103 (1982) is a conclusion of law subject to our full and independent review, *Gardner v. TEC Systems, Inc.*, 725 F.2d 1338, 1344, 220 USPQ 777, 782 (Fed.Cir.) (in banc), *cert. denied*, — U.S. ——, 105 S.Ct. 116, 83 L.Ed.2d 60, 225 USPQ 232 (1984), reversal in this instance would require more than a mere demonstration of error in analysis. Even assuming that such errors were committed, Cable must demonstrate that if the errors were corrected, the application of the law to the facts present would produce a different result. *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1573, 220 USPQ 584, 589 (Fed.Cir.1984). In short, such errors as may be demonstrated must have further been harmful. *See* 28 U.S.C.

§ 2111.[8] *Accord Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580, 219 USPQ 8, 12 (Fed.Cir.1983).

## C. Burdens of Proof

The burdens of demonstrating the absence of genuine issues of material fact and the entitlement to judgment as a matter of law is upon the summary judgment movant, Genmark. *Cooper*, 748 F.2d at 679, 223 USPQ at 1288. In this instance, as Genmark is also the party asserting the invalidity of a United States patent, the burden of demonstrating an entitlement to judgment as a matter of law includes the burden of overcoming the presumption of patent validity found in 35 U.S.C. § 282.[9] Cable claims that, despite explicit mention by the district court, the presumption of validity was not observed. The presumption of section 282 is "a procedural device which places on a party asserting invalidity the initial burden of going forward to establish a prima facie case on that issue." *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 885, 221 USPQ 1025, 1028 (Fed. Cir.1984). While "the burden of persuasion on the issue of invalidity also rests throughout the litigation with the party asserting invalidity," *id.*, if evidence is presented establishing a prima facie case of invalidity, the opponent of invalidity must come forward with evidence to counter the prima facie challenge to the presumption of section 282. This requirement is in no way contrary to the procedural role of the presumption of validity. Nor does it in substance shift the burden of persuasion on the issue. "In the end, the question is whether all the evidence establishes that the validity challenger so carried his burden as to have persuaded the decisionmaker that the patent can no longer be accepted as valid." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530 at 1534, 218 USPQ at 876 (Fed.Cir.1983).

Likewise, on a motion for summary judgment, the burden is upon the movant in support thereof to demonstrate an absence of genuine issues of material fact and then the entitlement to judgment at law. Fed.R.Civ.P. 56(c).[10] If a showing is made that would entitle the movant to judgment unless contradicted, then Fed.R. Civ.P. 56(e)[11] states that the nonmovant has the burden to show that such a contradiction is possible; it cannot rest upon its allegations and pleadings. *First National Bank v. First Bank Stock Co.*, 306 F.2d 937, 943 (9th Cir.1962). Indeed, this "shift of burden and the duty to come forward with possible contradiction of proof is the essence of Fed.R.Civ.P. 56." *DeLong Corp. v. Raymond International, Inc.*, 622 F.2d 1135, 1144, 206 USPQ 97, 104 (3d Cir.1980) (cited and quoted in part in *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1150, 219 USPQ 13, 17–18 (Fed. Cir.1983)). Here, once Genmark had established its prima facie case for summary judgment, which would have included a prima facie case for overcoming the presumption of validity, it fell upon Cable to submit evidence setting forth specific facts raising

**8.** 28 U.S.C. § 2111 (1982) reads as follows:

"*Harmless error.* On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

**9.** 35 U.S.C. § 282 (1982) contains the following first paragraph:

"*Presumption of validity; defenses*
"A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though

dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."

**10.** *See supra* note 6.

**11.** Fed.R.Civ.P. 56(e) states in relevant part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

a genuine issue for trial. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). This Cable clearly understood when it submitted, in opposition to the summary judgment motion of Genmark, deposition testimony and various declarations which it contended raised genuine issues of material fact relative to an obviousness analysis under *Graham*. In commenting on the effectiveness of one of these declarations in presenting evidence of factual issues requiring trial, the district court said "[p]laintiff [Cable] seeks to avoid summary judgment by introducing the declaration of an expert that, it claims, raises genuine issues of material fact." 582 F.Supp. at 97, 223 USPQ at 291. It is now contended that the "avoid summary judgment" phrase of this statement demonstrates that the district court improperly shifted to Cable, the patentee, the burden of persuasion on the issue of invalidity. We disagree.

For reasons to be discussed below, and with which we concur, the district court deemed the affidavits submitted by Cable to have been inadequate to show any genuinely contested issues of material fact. Thus, Cable failed in the duty imposed upon it by Fed.R.Civ.P. 56(e) to rebut the prima facie case for summary judgment by showing "that there is a genuine [factual] issue for trial." Contrary to the argument of Cable, this duty is distinct from that of "requiring that the evidence 'persuade' the court of patentability," which was condemned in *Jones v. Hardy*, 727 F.2d at 1528, 220 USPQ at 1025. The avoidance of summary judgment as to patent invalidity does not represent a shift of the burden of going forward to establish a case for invalidity or the burden of persuasion on the issue of invalidity. Under section 282 these burdens were imposed on Genmark, and we have not been given the impression that the district court shifted them to Cable. The stray and inconsequential quotations proffered in this regard from the

summary judgment hearing add nothing to the meritless claim that the presumption of validity was not observed.

### D. *Prior Art*

The district court opinion invalidating the Schwartz patent mentions a number of prior art patent references. Among these, U.S. Patent No. 3,968,355 to Smallegan (the Smallegan patent) discloses a night light controlled by a photosensitive switch and operated from an electric wall receptacle. It is undisputed that this reference alone teaches all of the limitations in the claims of the Schwartz patent, save those pertaining to what is termed in claim 1 thereof [12] "a shade of predetermined shape and appearance." In this regard, however, the Smallegan patent does contain a specific suggestion for providing some sort of shade about the bulb of the device to reduce the effect of the bulb on the photosensitive control, and other references discussed below exhibit the shade details recited in the patent in suit.

For example, U.S. Patent No. 3,694,607 to Fontana and U.S. Patent No. Des. 205,-371 to Mellyn, from which Fig. 3 is included here, disclose bottom-mounted night light shades which "frictionally engage and disengage in a snap-on manner ... said [lamp] housing in a position ... facilitating repeated replacement of said bulb," as is recited in claim 1 of the Schwartz patent.

FIG. 3

Additionally, U.S. Patents Nos. Des. 207,-500 and Des. 208,939, both also to Mellyn, show such shades having "front and side

---

**12.** Claim 1, the sole independent claim of the three claims in the Schwartz patent, is included by way of illustration in the Appendix to this opinion.

wall portions." Figs. 1 and 2 of the latter patent are included below and depict a shade fully described by the following limitation from claim 1 of the patent in suit:

[S]aid front wall portion [has] a generally planar surface extending between generally rectangular edges including longer vertically extending edges and relatively shorter horizontally extending edges, said side wall portions extending in a diverging manner generally symmetrically at a predetermined angle greater than 90 degrees away from said front wall portion toward a rearward plane of said [lamp] housing...."

FIG. 1

FIG. 2

All of these references are from the electric night light art, the same as that of the patent in suit and of the Smallegan patent. Based on the explicit suggestions for a shade contained in the latter, teachings of these references could have been combined to produce a device meeting all the limitations of claim 1 of Schwartz except for having "a generally polygonal-shaped pattern extending over substantially the entire front wall portion" of the shade.

This feature, however, can be found in the following patents among those mentioned by the district court as examples of such a teaching:

| U.S. Patent No. | Patentee |
| --- | --- |
| Des. 127,892 | Ohm |
| 3,549,879 | Meyer |
| 3,265,887 | Wince |
| 2,978,575 | Cohen |

None of these deal with shades for night lights specifically, but rather with shades for overhead lighting fixtures. Cable argues that these would use florescent light bulbs in contrast to the incandescent-type employed with the night light of the Schwartz patent. The declaration of 33-year Cable employee, Harry Hodgetts, head of the company's design engineering department (the Hodgetts declaration), attempts to puff up the difference between the two types of light bulbs as presenting "entirely different light diffusing problems," but fails absolutely to elaborate the nature of the purported differences. Such unsupported conclusional statements are not helpful in affidavits used to "avoid summary judgment."

 The references demonstrate that polygonal patterning on light shades was old in the lighting art, even if not in the narrow field of night lights. Each reference addresses a problem confronted by the Schwartz patent, namely, the diffusion of light from an electric bulb, be it incandescent or florescent, through a translucent

shade. In evaluating obviousness, the hypothetical person of ordinary skill in the pertinent art is presumed to have the "ability to select and utilize knowledge from other arts reasonably pertinent to [the] particular problem" to which the claimed invention is directed. *In re Antle*, 444 F.2d 1168, 1171–72, 170 USPQ 285, 287–88, 58 C.C.P.A. 1382, 1385–88 (1971); *see, e.g., Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1460, 221 USPQ 481, 487 (Fed.Cir. 1984). Assuming arguendo that these four references are not strictly within the field of art represented by Schwartz, they are easily within a field analogous thereto, and their teachings are properly combinable with the earlier references discussed above. *See Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1572, 220 USPQ 584, 588 (Fed.Cir.1984) (quoting *In re Wood*, 599 F.2d 1032, 1036, 220 USPQ 171, 174 (CCPA 1979)).

■ Cable faults the district court for failing to make determinations as to how teachings of the references could be combined to produce the patented invention. Nevertheless, the straight-forward quality of the invention and art involved make the required combination quite apparent. The district court pointed out features in each reference; presumably it was these that were to be joined. As to most teachings, several references were cited without delineating a single one of the group for combination with references showing other features. The district court did so apparently to demonstrate the widespread knowledge in the lighting art of each feature involved. As no serious ambiguity resulted, we observe no error in this.

■ Further, the suggestion to modify the art to produce the claimed invention need not be expressly stated in one or all of the references used to show obviousness. "Rather, the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art." *In re Keller*, 642 F.2d 413, 425, 208 USPQ 871, 881 (CCPA 1981) (and cases cited therein); *Leinoff v. Louis Milona &*

*Sons, Inc.*, 726 F.2d 734, 739, 220 USPQ 845, 848–49 (Fed.Cir.1984). The district court in invalidating the Schwartz patent relied exclusively and correctly on "knowledge clearly present in the prior art." *In re Sernaker*, 702 F.2d 989, 995, 217 USPQ 1, 6 (Fed.Cir.1983). In this respect it is to be sustained.

### E. *Hodgetts Declaration*

■ Cable claims that the Hodgetts declaration, if viewed "in a light most favorable" to Cable, raises genuine issues of material fact in relation to the inquiries required by *Graham* dealing with scope and content of the prior art and the differences between that art and the claims at issue. With respect to the references discussed above, the declaration adds little, if anything, not already in the record. While attempting to highlight differences between the teachings of the references and the claimed invention, it largely summarizes their contents and is thus duplicative in a manner which fails to demonstrate any genuine dispute as to issues of material fact and is not helpful in resolving patentability problems. "What we do find helpful is facts of which we would not otherwise be aware." *In re Vamco Machine & Tool, Inc.*, 752 F.2d 1564, 1576, 224 USPQ 617, 624 (Fed.Cir.1985).

The declaration states the opinion that "the patented invention of the Schwartz patent ... [would] not [have been] obvious to one of ordinary skill in the night light art" from the teachings of the references discussed. Obviousness, however, is a question of law.

> Opinion testimony by experts concluding that an invention would or would not have been obvious may influence the court's decision, but conflicting opinions on a legal issue vel non raise no issue of contested fact. Nor is the court's conclusion on obviousness an adverse inference of fact.

*Petersen Manufacturing Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1548, 222 USPQ 562, 567 (Fed.Cir.1984) (citations omitted).

We reject the contention that the Hodgetts declaration raised contested issues of fact. At most, the declaration offered an *interpretation* of undisputed factual evidence, but did not set forth specific conflicting facts that showed a genuine issue requiring trial.

### F. *Secondary Factors*

In making a determination on obviousness under 35 U.S.C. § 103, *Graham v. John Deere Co.*, 383 U.S. at 17, 86 S.Ct. at 693, 15 L.Ed.2d at 556, 148 USPQ at 467, sets forth, as providing· "background," "several basic factual inquiries," including the content of the prior art, the difference between that art and the claimed subject matter, and the level of ordinary skill in the subject art. In addition, it is suggested that certain "secondary considerations" which "give light to the circumstances surrounding the origin of the [patented] subject matter" *may* have relevancy as "indicia of obviousness or nonobviousness." *Id.* at 17–18, 86 S.Ct. at 693–694, 15 L.Ed.2d at 556–557, 148 USPQ at 467. The opinions of this court have suggested that evidence on these secondary considerations is to be taken into account *always*, "not just when the decisionmaker remains in doubt after reviewing the art." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1539, 218 USPQ 871, 879 (Fed.Cir.1983). *See Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1575, 222 USPQ 744, 746 (Fed.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985); *Radio Steel & Manufacturing Co. v. MTD Products, Inc.*, 731 F.2d 840, 846, 221 USPQ 657, 662 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984); *Jones v. Hardy*, 727 F.2d at 1530, 220 USPQ at 1027; *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1549, 220 USPQ 193, 197 (Fed.Cir.1983).

Nevertheless, a "nexus between the merits of the claimed invention and the evidence of secondary considerations is required in order for the evidence to be given substantial significance in an obviousness decision." *Simmons Fastener*, 739 F.2d at 1575, 222 USPQ at 746, *Stratoflex*, 713

F.2d at 1539, 218 USPQ at 879. Thus, the weight to be accorded evidence on secondary considerations is to be carefully appraised in relation to the facts of the actual case in which it is offered. *See EWP Corp. v. Reliance Universal, Inc.*, 755 F.2d 898, 908, 225 USPQ 20, 26 (Fed.Cir.1985); *In re Vamco Machine & Tool, Inc.*, 752 F.2d 1564, 1574–77, 224 USPQ 617, 623–25 (Fed. Cir.1985); *see also* Address by D. Chisum, AIPLA Annual Meeting (October 26, 1984), *reprinted in* 1984 AIPLA Bull. 618, 620 ("secondary not because they are secondary in importance [but] ... because they are relevant through a process of inference to the ultimate technical issue of nonobviousness [and being] ... relevant through a chain of inference, their force may be weakened for a variety of reasons").

■ Cable claims that a trial is required due to the existence of contested issues of material fact regarding (1) the commercial success of the Cable device embodying the claims of the Schwartz patent and (2) the copying of that device by Genmark.

### 1. *Commercial Success.*

Cable relies on the declaration of its chief financial officer, George Lema, executed October 31, 1982 (the Lema declaration). Relevant to this issue, it states only the following:

> Plaintiff [Cable] began manufacturing its night light in 1978. Since the introduction of that night light, over 5 million units have been sold. Profits of not less than fifty ($.50) cents per unit have been realized by plaintiff. Plaintiff's night light has been distributed nationwide in major department store chains and local hardware outlets.

Genmark has not disputed this statement, so it is to be accepted for what it shows. *Union Carbide*, 724 F.2d at 1575, 220 USPQ at 591.

Nevertheless, what it shows in relation to commercial success is fairly minimal. Without further economic evidence, for example, it would be improper to infer that the reported sales represent a substantial share of any definable market or whether

the profitability per unit is anything out of the ordinary in the industry involved. This type of information might bolster the existence in fact of any commercial success which may be demonstrated by the Lema declaration, but even assuming commercial success were clearly shown, Cable would face an additional hurdle before the Lema declaration could prove pertinent to nonobviousness.

As the district court correctly pointed out in declining to give weight to the Lema declaration on the issue of commercial success as an indicator of nonobviousness, this court in *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 218 USPQ 871 (Fed.Cir. 1983), has unequivocally stated that for commercial success of a product embodying a claimed invention to have true relevance to the issue of nonobviousness, that success must be shown to have in some way been due to the nature of the claimed invention, as opposed to other economic and commercial factors unrelated to the technical quality of the patented subject matter. Thus, a "nexus is required between the merits of the claimed invention and the evidence offered, if that evidence is to be given substantial weight enroute to [a] conclusion on the obviousness issue." *Id.* at 1539, 218 USPQ at 879. *Accord EWP Corp. v. Reliance Universal, Inc.*, 755 F.2d 898, 908, 225 USPQ 20, 26 (Fed. Cir.1985) ("a 'secondary consideration' must be carefully appraised as to its evidentiary value"); *Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1575, 222 USPQ 744, 746 (Fed.Cir. 1984), *cert. denied,* — U.S. —, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985); *In re Vamco Machine & Tool, Inc.*, 752 F.2d 1564, 1577, 224 USPQ 617, 625 (Fed.Cir.1985); *see also Ruben Condenser Co. v. Aerovox Corp.*, 77 F.2d 266, 268, 26 USPQ 62, 63 (2d Cir.), *cert denied,* 296 U.S. 623, 56 S.Ct. 145, 80 L.Ed. 443 (1935) (where Judge Learned Hand stated, "While it is always the safest course to test a putative invention by what went before and what came after, it is easy to be misled. Nothing is less reliable than uncritically to accept its welcome by the art, even though it displace[s] what went before"). Viewed in a light most favorable to Cable, from the Lema declaration an inference of some commercial success might be deduced, but as to establishing any "nexus" between that hypothetical success and "the merits of the claimed invention," no evidence was submitted in the declaration or elsewhere that could justify giving weight to the declaration in reaching a conclusion on obviousness. After considering the Lema declaration the district court correctly determined to accord it no weight.

### 2. *Product Copying.*

Cable alleges that Genmark copied the Cable night light in designing the accused infringing device and that this alleged copying is evidence of nonobviousness of the Schwartz patent. The evidence in support of the charge of copying in designing the Genmark product is ambiguous, even viewed in a light favorable to Cable. Deposition testimony of Thomas E. Corder, president of Diablo Technologies, Inc., apparently a successor of Diablo Products Corp., was offered on this point, but Genmark's own characterization of the implication of this evidence was merely that it showed that Corder "had access to and analyzed the appearance of plaintiff's night light during the period he was developing the accused Diablo [later Genmark] night light." Access to, and analysis of, other products in the market is hardly rare, even in the design stages of competing devices. Access in combination with similarity can create a strong inference of copying, but here Cable, as noted by the district court, failed to submit into evidence a sample of its own device for comparative purposes in evaluating the extent of similarity.

The Lema declaration states that "defendant [Genmark] deliberately copied plaintiff's night light when it designed its own night light," but only on *information and belief*, which under Fed.R.Civ.P. 56(e) is an inadequate basis upon which to base affidavits supporting or opposing summary

judgment.[13] Thus, in this instance, product copying at the design stage would be a strained inference.

Further, in pressing the relevance to non-obviousness of purported copying by Genmark, "[a]s is often the case [Cable] failed to distinguish infringement by a defendant from that of numerous other competitors." Note, *Subtests of "Nonobviousness": A Nontechnical Approach to Patent Validity*, 112 U.Pa.L.Rev. 1169, 1179 n. 51 (1964) (cited in *Graham v. John Deere Co.*, 383 U.S. 1, 18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966), as relevant to the decision of the Supreme Court to include secondary indicia in the prescribed obviousness determination). It is our conclusion that more than the mere fact of copying by an accused infringer is needed to make that action significant to a determination of the obviousness issue. *Accord Vandenberg v. Dairy Equipment Co.*, 740 F.2d 1560, 1567, 224 USPQ 195, 199 (Fed. Cir.1984), where copying of a patented device, despite the failure of protracted efforts by the copyist to design a similar device, was found to be an admission of the mechanical superiority of the patented version, but "not strong evidence of nonobviousness."[14]

Rather than supporting a conclusion of obviousness, copying could have occurred out of a general lack of concern for patent property, in which case it weighs neither for nor against the nonobviousness of a specific patent. It may have occurred out of contempt for the specific patent in question, only arguably demonstrating obviousness, or for the ability or willingness of the patentee financially or otherwise to enforce the patent right, which would call for deeper inquiry. Even widespread copying could weigh toward opposite conclusions, depending on the attitudes existing toward patent property and the accepted practices in the industry in question. It is simplistic to assert that copying per se should bolster the validity of a patent.

We do not concur in the reasoning evidenced by the statement of the district court that "it is just as likely that the similarity (assuming it exists) is more attributable to the simple obviousness of plaintiff's design rather than to defendant's deliberate mimicry." 582 F.Supp. at 97, 223 USPQ at 290. The record simply offers nothing in this regard, and the speculation involved is unwarranted. Nevertheless, in view of Cable's poor showing as to copying and in view of the barrenness of the record on the "nexus" between any copying arguably shown and the nonobviousness of the claimed invention, it would have been improper to give the alleged copying by Genmark much weight in the obviousness analysis. Thus, the district court treated this issue appropriately, and its comment above as to the reason for copying, if any exists, is but harmless error.

### G. *Disposition*

■ Based on a review of the record as discussed above, it is our conclusion that the patent portion of this case was properly resolved by a grant of summary judgment and that the Schwartz patent is invalid as being directed to obvious subject matter. We can discern no such genuinely disputed questions of fact material to such a judgment as would warrant a trial.

The art involved is easily grasped. The difference between the teaching of each reference and the claimed subject matter is clear, as is how those teachings are to be combined to yield the subject invention.

---

**13.** Fed.R.Civ.P. 56(e) states in relevant part:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits."

**14.** That is not to say that copying is always irrelevant in the context of other evidence of nonobviousness. *See Jones v. Hardy*, 727 F.2d 1524, 1531, 220 USPQ 1021, 1026–27 (Fed.Cir. 1984); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540, 1541, 218 USPQ 871, 880 (Fed. Cir.1983).

No issue has been raised about the level of skill employed in analysis, that of an ordinary layman of average intelligence and one in this case most favorable to Cable Electric. *Cf. Chore-Time Equipment, Inc. v. Cumberland*, 713 F.2d 774, 779 n. 2, 218 USPQ 673, 676 n. 2 (Fed.Cir.1983). Secondary considerations for the reasons stated above have been given proper weight.

Cable raises objection to the statement of the district court that it "has no difficulty finding it more likely than not that ... a shade of the type plaintiff claims ... [is] an obvious solution" to the problem confronted by plaintiff. Naturally, a determination on the issue of obviousness is no "finding"; it is question of law. Nevertheless, this slip and the concomitant use of the phrase, "more likely than not," are but harmless rhetorical error. Elsewhere throughout the patent opinion the district court shows a good understanding of the nature of and analysis associated with reaching a conclusion on obviousness. Nor do we agree with Cable that the district court either was "confused as to what the claimed invention in suit was" or failed to consider that invention as a whole.

### III. THE NONPATENT COUNTS

■ The district court granted the Genmark motion for summary judgment as to the nonpatent counts of Cable's amended complaint in a second Memorandum of Opinion and Order dated May 25, 1984 (the second opinion).[15] As the district court ultimately exercised its jurisdiction over the patent count discussed above under the patent provision of 28 U.S.C. § 1338(a),[16] we have jurisdiction also to review the appeal of the remaining nonpatent counts under 28 U.S.C. § 1295(a).[17] *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 907–09, 223 USPQ 982, 984–85 (Fed.Cir. 1984). *See also Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 223 USPQ 1074 (Fed.Cir.1984) (in banc).

Nevertheless, in deciding these nonpatent matters we do so "in the light of the problems faced by the district court from which each count originated, including the law there applicable," *Bandag*, 750 F.2d at 909, 223 USPQ at 986, and in the remaining portions of this opinion we will be guided by the relevant law in the Ninth Circuit, to the extent it can be discerned.[18]

### A. Lanham Act Cause of Action

Cable's federal nonpatent count is an action brought under the Lanham Act § 43(a), 15 U.S.C. § 1125(a) (1982). In essence, it is charged that the commercial configuration of the Cable night light has

**15.** *See supra* note 3.

**16.** 28 U.S.C. § 1338(a) (1982) states:
"Patents, plant variety protection, copyrights, trademarks, and unfair competition
"(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."

**17.** 28 U.S.C. § 1295(a)(1) (1982) states:
"Jurisdiction of the United States Court of Appeals for the Federal Circuit
"(a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—
"(1) of an appeal from a final decision of a district court of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title, except that a case involving a claim arising under any Act of Congress relating to copyrights or trademarks and no other claims under section 1338(a) shall be governed by sections 1291, 1292, and 1294 of this title[.]"

**18.** It has been clearly stated that in appeals to this court under 28 U.S.C. § 1295(a) of cases involving patent and certain nonpatent counts, "it will be the role and duty of the advocates to brief and argue [the nonpatent counts] in the appeal ... just as if they were appearing ... before that circuit [from which the case originated]." *Atari*, 747 F.2d at 1440, 223 USPQ at 1087. Such a rule could not in all fairness be applied in this case, as both of the appealed summary judgment decisions were argued and decided and all of the appeal briefs to this court were prepared and filed prior to the statement of the rule. Nevertheless, future litigants will be expected to frame their discussion of appealed nonpatent counts appropriately.

come to designate origin, and thus that Genmark's use of an allegedly similar configuration in its own commercial product constitutes a prohibited false designation of origin.

 Apart from what must be shown regarding an alleged copy in order to impose liability for copying, protection under the Lanham Act of the physical details and design of a product may be available if such features both (1) have acquired secondary meaning and (2) are nonfunctional. *Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.,* 644 F.2d 769, 772, 210 USPQ 351, 353–54 (9th Cir.1981).

The district court concluded that Cable was not entitled to protection as a matter of law, based on the second requirement, by concluding that the functionality of the Cable night light design was beyond dispute. To so conclude, it focused on the positions of Cable before the United States Patent and Trademark Office in obtaining allowance of the Schwartz utility patent and before the district court in opposing Genmark's motion for summary judgment on the patent count of this case. The argument Cable made was described as to the effect that the "night light's configuration was utilitarian—indeed, patentably so, providing special advantages in compactness, efficient bulb change, and light diffusion." 586 F.Supp. at 1508, 223 USPQ at 293. The district court thus held that Cable was bound by the argument it made on behalf of the nonobviousness of claims in a patent,[19] when the issue under consideration was the functionality of the actual design of a commercial device. In view of the considerations discussed below, the two can hardly be presumed to be even similar questions.

 Nonobviousness is a question of law fully reviewable on appeal. *Gardner*

*v. TEC Systems, Inc.,* 725 F.2d 1338, 1344, 220 USPQ 777, 782 (Fed.Cir.), *cert denied,* — U.S. ——, 105 S.Ct. 116, 83 L.Ed.2d 60, 225 USPQ 232 (1984). On the other hand, functionality in the context of this case is a question of a highly factual nature. *See Vuitton,* 644 F.2d at 775, 210 USPQ at 356. When the district court ruled on the issue of functionality, it improperly deprived Cable of the right to have a fact-finding tribunal examine the actual evidence which has bearing on the functionality question.

Below it was not a matter of examining the evidence proffered and concluding that there existed "no genuine issue as to any material fact," as required for a grant of summary judgment. Fed.R.Civ.P. 56(c). That point in analysis was never reached, because rather than looking to the actual evidence on nonfunctionality, the district court chose to utilize arguments made in relation to the meaning of invalid patent claims as admissions against interest about the factual nature of a product design. It did this, as far as we can determine, without analytically verifying the soundness for doing so. The court appears not to have considered whether the meaning of those claims was so unavoidably identical to the details of the product design ultimately marketed as to warrant the desirability or suitability of the use of statements about the former as reliable or legally binding admissions about the latter.

 In evaluating arguments made on behalf of the right to obtain or retain a patent, the proper object of scrutiny is the meaning of patent claims when compared to the teachings of the prior art. On the other hand, in assessing the right to protection from unfair product copying, the proper object of attention is the actual marketplace design of and marketing practices for an allegedly copied product when compared

---

19. An examination of the specification and prosecution history pertinent to the Schwartz patent, which are before us in the record, reveals no such argument made as to the utilitarian advantages mentioned by the district court. According to the customary practice, the argument of the parties below has not been included among the documents presented for our review. Thus,

we are not in a position to verify or deny the correctness of the characterization of the district court, but do, out of deference to its proximity to the participants in argument below and because the matter has not been disputed by Cable, defer to its description of those arguments and presume the accuracy thereof for purposes of reaching our decision.

to those of the alleged copy. The aim of the patent system is to enhance the incentive for useful innovation; the aim of the Lanham Act, section 43(a), even in the context of product simulation, is to protect a trader's established identity. *See International Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912, 918–19, 208 USPQ 718, 724–25 (9th Cir.1980), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981) ("to protect consumers against deceptive designations of the origin of goods and, conversely, to enable producers to differentiate their products from those of others").

■ In resolving the question of product design functionality for purposes of the Lanham Act, section 43(a), the fact finder is to consider the appearance of the *products* in issue. Reference to utility patent claims that are, or have been, asserted to read on either product, or to the appearance of the device depicted in figures included in the patent specification supporting such claims, must be done with caution. *Cf. Best Lock Corp. v. Schlage Lock Co.,* 413 F.2d 1195, 1199, 162 USPQ 552, 556, 56 C.C.P.A. 1472, 1477–78 (1969) (cautioning that "a utility patent is only 'some evidence' as to functionality" in its explanation of statements in *In re Shenango Ceramics, Inc.,* 362 F.2d 287, 292, 150 USPQ 115, 120, 53 C.C.P.A. 1268, 1274 (1966)). *See also In re Hollaender Manufacturing Co.,* 511 F.2d 1186, 1188, 185 USPQ 101, 102 (CCPA 1975); *In re Honeywell, Inc.,* 497 F.2d 1344, 1348, 181 USPQ 821, 824 (CCPA 1974). Claims may be capable of reading on many devices of strikingly different configuration. Thus, even the fact that the claims read on two commercial devices in the marketplace is not support in itself for a finding that one is a copy of the other or confusingly similar thereto for section 43(a) purposes. A manufacturer may choose in its commercial embodiment of a patented device to less than faithfully replicate the exemplary depiction of a claimed embodiment shown in the figures of the patent. Hence, for purposes of evaluating the existence or impact of product copying, the relevance of patent figures depends on the extent to which their appearance is replicated in the actual marketplace product of the patentee. We have been shown no Ninth Circuit precedent to the contrary.

Concluding that the grant of summary judgment as to Cable's Lanham Act count was improper, we vacate that portion of the case and remand it for further proceedings consistent with the above discussions. To guide its analysis regarding functionality, the district court is to utilize the ample case law available from the Ninth Circuit.

### B. *State Causes of Action*

■ The two California State causes of action contained in Cable's amended complaint will be treated together below. In one, a count for unfair competition, it is charged that Genmark, desiring not to create its own original night light design, but rather to trade upon the good will reposed by the purchasing public in the configuration and packaging of Cable's night light, deliberately copied both. In the other state count, the use of the configuration chosen by Genmark for its night light is alleged to contribute to the dilution and to constitute infringement of Cable's rights in California State trademark registration number 70905, which is apparently substantially identical in appearance to that of Cable's night light.

The district court granted summary judgment as to both state causes, dismissing them for essentially the same reasons. 586 F.Supp. at 1508, 223 USPQ at 293. The state counts were said to present a "paradigm case" in which to apply the "established principles of federal preemption" of state-law intellectual property protection found in *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, 140 USPQ 525, *reh'g denied,* 376 U.S. 973, 84 S.Ct. 1131, 12 L.Ed.2d 87 (1964), and *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, 140 USPQ 528, *reh'g denied,* 377 U.S. 913, 84 S.Ct. 1162, 12 L.Ed.2d 183 (1964). As an "alternative ground" for its decision, the district court relied on its conclusion mentioned above that the functionality of

Cable's product configuration was beyond dispute. That configuration was thus held not to be susceptible to protection under California law, either in the form of a registered state trademark, or as a product capable of being unfairly copied by competitors. *Id.* The error in the conclusion of the district court on functionality has already been addressed in relation to the Lanham Act count. Those same remarks are equally applicable to the dismissal of state causes of action. The discussion which follows will accordingly treat solely the issue of federal-state preemption.

### 1. *Choice of Law*

The Federal Circuit is vested with exclusive jurisdiction over the appeals of final decisions in cases before federal district courts only where the jurisdiction of those courts was based in whole or in part on the patent provisions of 28 U.S.C. § 1338. *See* 28 U.S.C. § 1295(a)(1).[20] In creating this nationwide subject matter jurisdiction in the area of patent appeals, it was the intention of Congress to provide a forum that would increase doctrinal stability in the area of patent law and reduce forum shopping, which was considered to be common in patent litigation.[21] Nevertheless, section 1295(a)(1) does not limit the jurisdiction of the Federal Circuit over appeals from the district courts exclusively to the review of claims based on the patent laws. When patent claims are joined in the same case with other counts, the appeal of nonpatent counts accompanies the appeal of the patent count to this court. In such "mixed cases" this avoids the bifurcation of appeals between the Federal Circuit and the regional circuit to which appeals from the district court of nonpatent counts would otherwise be directed. *See* H.R.Rep. No. 312, 97th Cong., 1st Sess. 41 (1981), quoted and discussed in *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1435, 223 USPQ 1074, 1083–84 (Fed.Cir.1984) (in banc).

Congress recognized that this solution for reducing forum shopping in patent litigation and for avoiding bifurcated appeals, could through the joinder of frivolous patent causes of action, for example, "create forum shopping opportunities between the Federal Circuit and the regional courts of appeals on other [nonpatent] claims." S.Rep. No. 97–275, 97th Cong., 2d Sess. 20, *reprinted in* 1982 U.S.Code Cong. & Ad. News 11, 30. Several appropriate responses by the circuit courts were recommended. *Id.*

In due course it became apparent that even the joinder of nonfrivolous patent counts with other nonpatent causes of action creates a potential for forum shopping in the appeal of the nonpatent causes. Recognizing that the motivation for such appeal forum shopping resides in the perceived opportunity to secure on appeal the application in the nonpatent counts of law differing from that which would otherwise be used in the regional circuit, this court sitting in banc at its own initiative declared in *Atari*, 747 F.2d at 1440, 223 USPQ at 1087, its intention in the review of certain nonpatent matters to apply the "discernable law of the involved circuit" from which the appeal originated.[22]

---

**20.** *See supra* note 17.

**21.** For the legislative history of the statute creating the United States Court of Appeals for the Federal Circuit, the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, and the intention of Congress thereby to achieve this uniformity, see S.Rep. No. 97–275, 97th Cong., 2d Sess. 3–6, *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, 13–16. Uniformity was also sought in federal personnel, government contract, and Little Tucker Act cases. 28 U.S.C. § 1295 (1982).

**22.** This general principle had already been specifically effected by various three-judge panels of this court in reviewing specific procedural matters, *In re Medical Prosthetics Research Associates, Inc.*, 739 F.2d 618, 620 (Fed.Cir.1984); *W.L. Gore & Associates, Inc. v. International Medical Prosthetics Research Associates, Inc.*, 745 F.2d 1463, 223 USPQ 884 (Fed.Cir.1984); *Panduit Corp. v. All States Plastic Manufacturing Co.*, 744 F.2d 1564, 223 USPQ 465 (Fed.Cir.1984) (all concerning attorney disqualification), and specific substantive matters. *See American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1366–67, 220 USPQ 763, 775–76 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984) (the necessity of showing relevant market to establish a section 2 Sherman

## 2. *Preemption*

Notwithstanding the fact that the Supreme Court has made several pronouncements on the interrelationship of the federal patent laws to state protection of intellectual property,[23] we conclude that the proper reach of the preemptive effect of the federal patent laws in relation to the diverse assortment of trade regulation laws existing in the fifty states is not a matter over which this court has a mandate to unify the law evolved in the regional circuits.

This issue is not one that can come before this court in the appeal of a case that was based at the district court level solely on the patent provisions of 28 U.S.C. § 1338(a). The federal-state preemption question is presented exclusively in state intellectual property causes of action. When a patent cause is joined with a state intellectual property cause of action in a single "mixed" case, and both causes are appealed, the issue of federal-state preemption can reach this court for review. In the absence of a patent count below, the appeal of the state action and the associated preemption issue will be resolved in the regional circuit. Thus, the correct application of the preemption priniples voiced in *Sears* and *Compco* is a responsibility which is shared between this court and the regional circuits.

██ Consequently, under the guidance of *Atari*, when the preemption issue is reviewed in this circuit we will apply the law that has evolved in the regional circuit in which the case containing the issue was originally tried. Adopting this course will then assure that preemption is applied uniformly in the cases of a given regional circuit, whether they are appealed there or, by including a nonfrivolous patent cause of action, reviewed here. Such a rule will reduce the incentive for forum shopping with respect to a significant threshold issue in state causes of action.

## 3. *Disposition*

██ Unfortunately, when it decided whether the state counts pled by Cable in this case were preempted by *Sears* and *Compco*, the district court did not look to the law of the Ninth Circuit for standards or methodology. This was understandable because at that time the gathering consensus of this court regarding the correct body of law under which to review certain nonpatent matters had yet to be announced in our decision in *Atari*.[24] Accordingly, neither the district court nor this one has had the benefit of any presentation by the parties on the issue of federal-state preemption in terms of the Ninth Circuit law which is proper to consult in this instance.[25]

Accordingly, the grant of summary judgment as to both state actions is vacated, and these counts are remanded for recon-

---

Act violation); *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,* 750 F.2d 903, 909, 223 USPQ 982, 986 (Fed.Cir.1984) (infringement of federally registered trademarks). All were cited in *Atari,* 747 F.2d at 1438–40, 223 USPQ at 1086–87, as having recognized the "freedom of the district courts to follow the guidance of their particular circuits in all but the substantive law fields assigned exclusively to this court."

**23.** In addition to the *Sears* and *Compco* cases already cited, *see, e.g., Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315, 181 USPQ 673 (1974); *Goldstein v. California,* 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163, 178 USPQ 128, *reh'g denied,* 414 U.S. 883, 94 S.Ct. 27, 38 L.Ed.2d 131 (1973).

**24.** The district court supported its decision that preemption applies in this case exclusively with

the authority of *Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1448–49, 221 USPQ 97, 113 (Fed.Cir.1984). *Litton* not only preceded the in banc pronouncements on choice of law in *Atari,* but it held that preemption applied to a pair of Minnesota State causes of action without finding it necessary to address the choice of law issue. *Litton* did acknowledge the potential for a choice of law issue as to another nonpatent count there on appeal, a cause of action under section 43(a) of the Lanham Act, but explicitly refrained from resolving that choice in deciding the appeal. The correct body of law to apply in section 43(a) matters was determined subsequently in *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,* 750 F.2d 903, 909, 223 USPQ 982, 986 (Fed.Cir.1984), which was issued on the same day as *Atari.*

**25.** *See supra* note 18.

sideration by the district court in light of the *Atari* mandate to use local circuit law in doing so. This is done out of fairness to the litigants who should be able in our view to address the state causes in such terms before a decision is rendered. Nevertheless, we do so without making any suggestion as to what would be a correct resolution of the federal-state preemption issue when considered under the law of the Ninth Circuit.[26]

## IV. CONCLUSION

The grant of summary judgment based on the invalidity of the Schwartz patent is affirmed. The grant of summary judgment as to the Lanham Act and the two California State causes of action is vacated. Those causes are remanded for such further proceedings as are rendered appropriate by this opinion.

The conduct of discovery in this case is returned to the sound discretion of the district court. It is free at the request of either party to reconsider or affirm any of its earlier discovery rulings based on the legal issues and factual areas of inquiry that it deems have relevance to this case in view of the above discussions.

AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED.

## APPENDIX

In Claim 1 of the Schwartz patent bracketed material and paragraphing have been · added below:

1. A portable light-sensitive electrical device capable of being used with and movable between one or more of a number of spaced existing conventional electrical receptacles of the type normally found mounted in walls, or the like, comprising in combination:

[a.] a housing having front, rear, side, top and bottom wall portions,

[b.] an electrical circuit carried within said housing,

[c.] blade means electrically connected to said circuit with portions thereof extending from said housing for removably matingly engaging and being physically mounted to contacts of an electrical receptacle,

[d.] lamp-receiving socket means electrically cooperative with said circuit and whose substantially sole source of current is from said receptacle,

[e.] and light-sensitive means carried by said housing and disposed so as to be able to receive ambient light for controlling current flow from one of said receptacle contacts to said socket means, allowing more current flow to said socket means as ambient light received by said light-sensitive means decreases and lesser current flow to said socket means as said received light increases,

said device being characterized by the absence of need for a power source other than that to which it is connected and

wherein said housing does not cover the receptacle openings and surrounding receptacle portions of the unused receptacle of a duplex receptacle to which the device is connected,

said light sensitive means including a photo conductive cell,

said device [further] including

[i.] an electric light bulb with portions thereof mounted in said socket and

[ii.] a shade of predetermined shape and appearance,

said shade comprising front and side wall portions, said front wall portion having a generally planar surface extending between generally rectangular edges including longer vertically extending edges and relatively shorter horizontally extending edges, said side wall portions extending in a diverging manner general-

---

26. *But cf. Petersen Manufacturing Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1550 n. 10, 222 USPQ 562, 569 n. 10 (Fed.Cir.1984), where a panel of this court stated in dicta that the Ninth Circuit precedent, *Tveter v. AB Turn-O-Matic,* 633 F.2d 831, 220 USPQ 22 (9th Cir.1980), held in effect that the state law trademark claim in *Petersen* was properly dismissed under *Sears* and *Compco.*

ly symmetrically at a predetermined angle greater than 90 degrees away from said front wall portion toward a rearward plane of said housing,

said shade being formed ... at said front wall portion with a generally polygonal-shaped pattern extending over substantially the entire front wall portion,

said shade further comprising bottom means capable of being swung inwardly to frictionally engage and disengage in a snap-on manner and be mounted to said housing in a position with respect to said housing illustrated in FIG. 1 of the drawing, said shade engagement and disengagement with said housing facilitating repeated replacement of said bulb.