51 CCPA

**Application of George C. MAPELSDEN.**

**Patent Appeal No. 7123.**

United States Court of Customs and Patent Appeals.

March 26, 1964.

Frank L. Neuhauser, Washington, D. C. (Harry F. Manbeck, Jr., Fort Wayne, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

Mapelsden appeals from the decision of the Board of Appeals affirming the examiner's rejection of claim 2, the only remaining claim, of application Serial No. 764,910, filed October 2, 1958, for Strain Relieving Cord Connector.

The invention is said to relate particularly to a connector for use with an electrical cord having two or more parallel conductors that are covered by an insulating jacket of non-circular shape. It is stated that such cords are identified by the industry as "parallel" cords to distinguish from the circular cross-section cords having two or more insulated conductors twisted around each other. The application states:

"The novel feature of this invention resides in the strain relief means or cord entrance guard at the back end of the connector which protects the cord from excessive bending."

Figures 1 and 2 of the application are reproduced below:

FIG. 1.

FIG. 2.

Appellant's electrical cord connector is for use with a cord 17 having two paral- lel conductors. The connector consists of a contact supporting portion 14, an

intermediate cord gripping portion 15 and an entrance guard 13 which has a passageway 21 for the cord.

The appealed claim reads:

"2. A female connector for an electrical cord having at least two parallel conductors covered by an insulating jacket of generally oval shape with a major and a minor axis, the connector comprising a four-sided body of insulating material with a contact supporting compartment at one end, an intermediate section wherein the cord is gripped within the connector body, and a strain relieving cord-entrance guard at the opposite end of the connector, the outer periphery of said body where the intermediate section meets the cord guard having a generally oblong rectangular configuration the cord guard having a four-sided passageway of gradually outwardly increasing cross-section, the four sides of the passageway being arranged in general alignment longitudinally to the four sides of the body and outwardly curved to limit the radius of bend of the cord a pair of contact members held within the supporting compartment and connected at their terminal ends to the conductors of the cord, the innermost end of said passageway being generally of square cross-section with its sides slightly larger than the major axis of the cord, so that when the cord is bent edgewise, the cord will twist to an angle of 90° and will assume a flatwise bend against one of the side walls of the passageway, thereby increasing the flex life of the cord the outermost end of the passageway having a generally oblong rectangular peripheral configuration which is no greater in length and width than said outer periphery of said body thereby to provide an integral strain relief of compact, sturdy and economical structure."

The references relied on by the examiner and the board are:

Becker    1,880,069  September 27, 1932.
Folsom   2,192,737  March 5, 1940.

Becker discloses an electrical cord connector comprising principally a contact supporting section, an intermediate cord gripping portion and a cord entrance guard. The guard has a rounded outwardly flaring central bore which "prevents any sharp kinks or bends" in the conductor adjacent the connector.

Folsom discloses an electrical cord connector comprising a contact supporting section and a cord gripping portion. The connector is of a four-sided or generally rectangular cross-section to accommodate a conventional parallel conductor cord of generally rectangular cross-section.

The board regarded the claim as unpatentable over the Becker and Folsom patents. It took the view it would involve only following the teaching of Becker to add a guard to Folsom's connector and found nothing unobvious in the manner in which the guard is provided by appellant.

■ Appellant argues that "if the Becker structure is added to Folsom, we have a resultant structure wherein an oval cord is centered within a round flared part." We do not find that argument convincing. Certainly, a person of ordinary skill in the art would find in Becker the suggestion to provide an outwardly flaring cord guard on the connector of Folsom. Moreover, it would be obvious to make such a guard of rectangular cross-section to correspond to the generally rectangular cross-section of both the cord and connector of Folsom instead of the circular cross-section which Becker uses in connection with the circular cord and connector of his construction. The issue lies in what the combination of references makes obvious to the person of ordinary skill and not whether a feature of one reference can be bodily incorporated in the other to produce the subject matter claimed. In re Henley, 239 F.2d 399, 44 CCPA 701.

Appellant emphasizes the recitation in the claim that the innermost end of the four sided passageway of the guard is "generally of square cross-section with the sides slightly larger than the major axis of the cord, so that when the cord is bent edgewise, the court will twist to an angle of 90° and will assume a flatwise bend against one of the side walls of the passageway." He urges that "the routineer about whom the Board speaks," even if he were smart enough to obtain a cord guard of rectangular shape after combining Becker and Folsom, would not bother to provide a "generally square shape" at the inner end of the guard. The feature of a generally square shape at the inner end of the passageway with all four sides slightly larger than the major axis of the cord is described as allowing the cord to twist through a 90° angle when the cord is bent around its minor axis and permitting the cord to end up in a flatwise bend against the side of the guard beyond the twist without undue stress resulting.

■ Contrary to appellant's contention, the examiner and board did not disregard or misunderstand that feature of the construction. Thus, the board stated that the routineer, obviously meaning one of ordinary skill in the art, would be cognizant "that the parallel cord bends more easily about the major axis of its cross-section" and that "the guard must flare outwardly at such an angle as to accommodate the cord in the region of the twist." Further, the examiner quoted the recitation of the "generally square cross section" with sides "slightly larger" than the major axis of the word and noted that Becker teaches that the innermost portion of the passageway of the guard is slightly larger than the cord. We are satisfied from the obvious and inherent bending characteristic of the parallel cord and the aforementioned teaching of Becker that the board did not err in its view of the feature in question.

The age of the references, which issued in 1932 and 1940, respectively, is advanced by appellant as an indication that their combination is relied on in the rejection is not obvious. However, we do not find that circumstance of any significant weight here. See In re Beauchamp, 210 F.2d 309, 41 CCPA 791.

Appellant also refers to the reference in the claim to the outermost end of the passageway as having a generally oblong rectangular peripheral configuration which is "no greater in length and width" than the outer periphery of the connector body as a limitation not met by the combination of references. Nothing more than an obvious matter of choice is seen in that feature, it being noted that the outermost end of the passageway of the outwardly flaring guard of Becker also is shown appreciably smaller in cross-section than the main body of the connector.

Finding no error, the decision is affirmed.

Affirmed.