956 F.2d 1174
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Lee R. BOLDUC.
 No. 90-1335.
 United States Court of Appeals, Federal Circuit.
 Feb. 21, 1992.
 
 Before PLAGER, Circuit Judge, EDWARD S. SMITH, Senior Circuit Judge, and LOURIE, Circuit Judge.
 EDWARD S. SMITH, Senior Circuit Judge.
 
 
 1
 Tri-Point Medical, LP (Tri-Point), as assignee of the Bolduc application, appeals the final decision of the Board of Patent Appeals and Interferences (Board) affirming the rejection of claims 1-9 and 13 of patent application Serial No. 049,361 entitled "Aerosol Spray System". The examiner rejected independent claims 1 and 6 based on 35 U.S.C. § 103 as obvious in view of the prior art. Dependent claims 2-5, 7-9 and 13 were held to stand or fall with the independent claim upon which they depend. Affirm-in-part, reverse-in-part.
 
 The Invention
 
 2
 The Bolduc application discloses an aerosol dispensing device in which two (or more) compounds may be maintained separately. The container for the aerosol preparation is filled with propellant and a component to be discharged. Another compound is located inside an ampule, made of an easily breakable material, held against the bottom of the container by a rod which extends downward from the valve. Depressing the valve actuator causes the rod to crush the ampule and release the ampule's contents. The two active ingredients then mix and the preparation may be sprayed from the container.
 
 
 3
 The Cronan patent, United States Patent No. 3,591,089 (the '089 patent) granted in 1971, also discloses an aerosol container and breakable ampule. However, the breakable ampule in the '089 patent is held against the interior wall of the container. The ampule contains a compound to be mixed with the contents of the container and a weight to cause the ampule to break. Shaking the Cronan device causes the weight to shatter the ampule and release the ampule contents into the container. The compounds then mix and may be sprayed from the device.
 
 
 4
 The Bellocchio patent, U.S. Patent No. 1,779,959 (the Bellocchio reference) granted in 1930, discloses a fire extinguisher. The fire extinguisher is composed of a container filled with a solution of sodium bicarbonate, a valve, an actuator, and a rigid dip tube which extends into the container. Held in place at the end of the dip tube is a breakable ampule filled with citric acid. When the actuator is depressed, the dip tube breaks the ampule against the bottom of the container releasing the citric acid. The acid and base then react, causing the pressure inside the container to rise and expel the contents.
 
 The Bellocchio Reference
 
 5
 The test whether a reference is properly considered as analogous art is found in In re Wood.[1] "First, we decide if the reference is within the field of the inventor's endeavor. If it is not, we proceed to determine whether the reference is reasonably pertinent to the particular problem with which the inventor was involved."[2]
 
 
 6
 Tri-Point maintains that the field of the inventor's endeavor is limited to aerosol preparations, and does not extend to fire extinguisher art. The Solicitor counters by pointing out that the fire extinguisher becomes pressurized once activated, and thereby fits into the definition of an aerosol. Prior to activation and use, Bellocchio's fire extinguisher is not pressurized. Bolduc, on the other hand, is produced in a pressurized form. The field of the inventor's endeavor in this case is limited to containers which are filled with a propellant under pressure, and does not extend to unpressurized fire extinguisher art. Thus, the Bellocchio reference is not in the field of the inventor's endeavor.
 
 
 7
 The next question from Wood is whether the Bellocchio reference is reasonably pertinent to the particular problem with which the inventor was involved.[3] The problem faced by Bolduc was keeping two chemical compounds separate prior to use. Keeping the chemicals separate provides several advantages: enhanced stability of the preparation by preventing decay of a possibly short-lived mixture; longer shelf-life of the preparation; and delayed degradation of the container, or its components, by the chemicals once they mix.
 
 
 8
 The fire extinguisher disclosed by Bellocchio has a characteristic in common with both Cronan and Bolduc. All three inventions keep two chemical compounds separate until just prior to use. The standard by which to evaluate the Bellocchio reference is whether it is "reasonably pertinent" to the problem faced by Bolduc. A reference which reveals a method to maintain two compounds separate prior to use is reasonably pertinent to the problem the inventor faced. In Bellocchio, the acid and base must be kept separate prior to use because the reaction of the two chemicals is the mechanism by which the fire extinguisher operates. Bellocchio presents a possible, but not exclusive, solution to the problem faced by Bolduc. The fire extinguisher, while not in the field of the inventor's endeavor, is reasonably pertinent to the problem that Bolduc faced.
 
 Obviousness of Combination
 
 9
 An invention will not be rendered obvious merely by combining teachings found in the prior art.[4] There must be some suggestion or incentive in the prior art to make the combination.[5] Also, the prior art must suggest that the combination would have a reasonable likelihood of success.[6] The suggestion to make the combination and likely success may not be gleaned from the applicant's disclosure.[7] The Board found that one of ordinary skill in the art would have readily appreciated the more stable Bellocchio arrangement. In addition, the Board found that it would have been obvious to modify the Cronan device with the teachings of Bellocchio. The record does not support the Board's conclusions.
 
 
 10
 The Board's decision implies that the Bolduc invention should have been obvious to one of ordinary skill in the art as early as 1971. When Cronan obtained the '089 patent in 1971, the Bellocchio reference was forty-one years old. Not until fourteen years later, when the Bellocchio reference was over fifty-five years old, did Bolduc begin attempts to patent an invention which had characteristics of both Bellocchio and the '089 patent. Likewise, the Board's decision suggests that the combination of the Bellocchio patent and the '089 patent should have been obvious to Cronan in view of his own invention. Instead, Cronan developed and patented inventions which also faced premature ampule breakage problems. Cronan actively sought to improve his invention but did not make the combination that the Board maintains is obvious. Cronan's efforts and patents are evidence that the combination was in fact nonobvious.
 
 Conclusion
 
 11
 The decision of the Board is reversed as to Claim 1 and as to Claims 2-5, which the Board held "stand or fall" with Claim 1. Since the rejection of Claim 6 has not been argued, the Board is affirmed as to that claim and dependent claims 7-9 and 13, which were rejected and held to "stand or fall" with Claim 6.[8]
 
 
 
 [1]
 599 F.2d 1032, 202 USPQ 171 (C.C.P.A.1979)
 
 
 [2]
 Id. at 1036, 202 USPQ at 174
 
 
 [3]
 Id
 
 
 [4]
 ACS Hosp. Systems, Inc. v. Montefiore Hosp., 732 F.2d 1572, 1577, 221 USPQ 929, 933 (Fed.Cir.1984)
 
 
 [5]
 Id
 
 
 [6]
 In re Dow Chem. Co., 837 F.2d 469, 473, 5 USPQ2d 1529, 1531 (Fed.Cir.1988)
 
 
 [7]
 Id
 
 
 [8]
 In re Sernaker, 702 F.2d 989, 991, 217 USPQ 1, 3 (Fed.Cir.1983)