991 F.2d 809
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re QED ENVIRONMENTAL SYSTEMS, INC., Frederick E.
Bernardin, William D. Dickerson, and David Mioduszewski.
 No. 92-1306.
 United States Court of Appeals, Federal Circuit.
 March 8, 1993.
 
 Before MAYER, CLEVENGER and SCHALL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioners, QED Environmental Systems, Inc. (QED), Frederick E. Bernardin, William D. Dickerson, and David Mioduszewski, appeal the decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board) holding unpatentable claims 1-4 of application Serial No. 07/192,288 (the '288 application).[1] We affirm.
 
 BACKGROUND
 A. Prior Proceedings
 
 2
 Pursuant to an agreement settling litigation between QED and American Sigma, Inc. (Sigma), QED submitted claims 1-4 of the '060 patent for reissue. Sigma protested reissue of the '060 patent. The settlement agreement also provided that Sigma request reexamination of the '060 patent. Reexamination was ordered, and the reissue and reexamination proceedings were merged in the PTO. In a final rejection, claims 1-4 of the '060 patent were found unpatentable under 35 U.S.C. § 103.[2]
 
 
 3
 Claim 1 was rejected under 35 U.S.C. § 103 as being unpatentable over a commercial brochure by Industrial & Environmental Analysts, Inc. entitled "Procedures and Equipment for Groundwater Monitoring" (IEA ), in view of PCT application WO 82/01738 to Riha et al. (Riha PCT ), an article by Riha entitled "Investigation Methods of Groundwater Pollution in the Western Suburbs of Melbourne, Victoria" (Riha article ), and a journal article entitled "Monitoring Device Simplifies Sample Collection" (Barcad ). Claims 2-4 were rejected under 35 U.S.C. § 103 as being unpatentable over the references applied against claim 1, and further in view of U.S. Patent No. 3,647,319 to McLean et al. (McLean et al ).
 
 
 4
 QED appealed the final rejection of claims 1-4 to the Board, arguing that the examiner's combination of references under 35 U.S.C. § 103 was improper, and that the combination failed in any event to disclose the claimed invention. The Board sustained the rejection, whereupon QED appealed to this court.
 
 B. The '060 Patent
 
 5
 The claims of the '060 patent are directed to a sampling system for withdrawing fluid from inground monitoring wells. In particular, the '060 patent is directed to a ground water sampling system which prevents sample contamination by the sampling equipment and aboveground environment. The sampling system variously recited in claims 1-4 comprises permanently installed (i.e., dedicated) inground components, including a bladder pump and conduit for connecting the bladder pump to a wellhead assembly and/or a portable controller. The dedicated inground components prevent "inter-well" contamination, which typically occurs when a pump is used to sample multiple wells.
 
 
 6
 According to QED's own characterization, the apparatus of claim 1 comprises a "dedicated bladder pump, wellhead assembly, and conduit components for withdrawing groundwater samples from a groundwater monitoring well." Claims 2 and 3 variously recite dedicated bladder pumps and a portable controller which can be selectively connected and disconnected to respective, dedicated pumps in multiple sampling wells. Claim 4 recites a dedicated bladder pump, wellhead assembly, and portable controller.
 
 DISCUSSION
 
 7
 We review de novo the Board's ultimate determination of obviousness. In re De Blauwe, 736 F.2d 699, 703, 222 USPQ 191, 195 (Fed.Cir.1984). However, determinations of obviousness are predicated upon underlying factual inquires such as the scope and content of the prior art, differences between the prior art and the claimed invention, and level of ordinary skill in the art. Graham v. John Deere Co., 383 U.S. 1, 17-18, 148 USPQ 459, 467 (1966). We review these underlying factual inquiries of obviousness for clear error. In re Caveney, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985).
 
 
 8
 QED does not deny that the prior art discloses dedicated sampling pumps, sampling systems with bladder pumps, wellhead assemblies, connecting conduits, and portable controllers. Rather, QED emphasizes the respective "gaps" in the individual teachings of each reference, and argues that the examiner based the obviousness rejections of claims 1-4 on improper combinations of the references. According to QED, "[t]here is no teaching, motivation or suggestion disclosed in any of the references for combining all the elements of the claimed invention" (emphasis added).
 
 
 9
 QED's argument improperly isolates the teachings of the individual references, and ignores well established law that obviousness is determined by reference to the level of skill of one having ordinary skill in the art. Moreover, this court recently reiterated the proper perspective from which obviousness is determined:
 
 
 10
 While there must be some teaching, reason, suggestion, or motivation to combine existing elements to produce the claimed device, it is not necessary that the cited references or prior art specifically suggest making the combination. ... Such suggestion or motivation to combine prior art teachings can derive solely from the existence of a teaching, which one of ordinary skill in the art would be presumed to know, and the use of that teaching to solve the same or similar problem which it addresses.
 
 
 11
 In re Oetiker, 977 F.2d 1443, 1448, 24 USPQ2d 1443, 1448, (Fed.Cir.1992) (Nies, C.J., concurring) (citing In re Nilssen, 851 F.2d 1401, 1403, 7 USPQ2d 1500, 1502 (Fed.Cir.1988), and In re Wood, 599 F.2d 1032, 1037, 202 USPQ 171, 174 (CCPA 1979)).
 
 
 12
 With respect to claim 1, QED argues that the combined references fail to disclose the dedication of a bladder pump in sampling systems. QED also contends that the cited references can not be properly combined to show a sampling system having a dedicated bladder pump and wellhead assembly. We disagree.
 
 
 13
 The Board found that IEA describes the problem of cross-contamination of sampling wells, and suggests "dedicating sampling equipment to individual wells" as a nonpreferred alternative solution to this problem. Furthermore, Riha article specifically describes installation of a bladder pump in a sampling well, and immediately thereafter suggests that the pump "may be left in the aquifer throughout the investigation period, avoiding possible contamination from previous sampling of other bores." Thus, IEA and Riha article contemplate dedication of sampling pumps, generally, and bladder pumps, specifically. Based on these findings the Board concluded that it would have been obvious for one of ordinary skill in the art to use a sampling system having a dedicated bladder pump. The Board's findings are not clearly erroneous, and its conclusion regarding the obviousness of dedicating a bladder pump is correct as a matter of law.
 
 
 14
 Regarding the combination of Barcad with the other cited references, the Board's decision states:
 
 
 15
 [T]he patent owner does not specifically address the teachings of the [Barcad ] reference as they relate to a suggestion of a permanently installed wellhead ..., and we will treat such lack of argument as a concession that the Barcad reference would have suggested a permanent wellhead assembly when any pump, including a bladder pump, is dedicated to a sampling well.
 
 
 16
 Ex Parte QED at 6-7. QED denies that such a concession was made, and argues that Barcad can not be combined with sampling systems which use a bladder pump, or with sampling systems which include multiple dedicated pumps and a single portable controller. At oral argument, QED even suggested that Barcad is nonanalogous art.
 
 
 17
 The scope and content of the prior art is a factual determination underlying a conclusion of obviousness. In re Clay, 966 F.2d 656, 658, 23 USPQ2d 1058, 1060 (Fed.Cir.1992) QED failed to raise this factual issue below, and thus is barred from doing so now on appeal. Braun Inc. v. Dynamic Corp., 975 F.2d 815, 821, 24 USPQ2d 1121, 1127 (Fed.Cir.1992). In any event, on the record before us, we have great difficulty seeing merit in the argument that Barcad, which appears in the Water Well Journal, and which discusses the problem of sampling well contamination, is nonanalogous art.
 
 
 18
 Despite QED's alleged "concession" regarding Barcad, the Board nevertheless addressed the reference. Doing so, it found that the written description and illustrations in Barcad suggest the use of a permanently installed wellhead to protect a sampling well borehole from aboveground contaminates. In rebuttal, QED argues that the success of its commercial embodiment over the device shown in Barcad and the particular "contaminating" operation of the pumps shown in Barcad preclude combining Barcad with the other references.
 
 
 19
 QED's argument misses the point. Barcad was not cited to establish the prior art use of various pump types, but as evidence that one of ordinary skill in the art would recognize the obviousness of employing a wellhead assembly to prevent contamination of a sampling well borehole. We find no error in the Board's characterization of Barcad, or in the combination of Barcad with the other references used to reject claim 1.
 
 
 20
 With respect to claims 2-4, QED does not deny that the prior art discloses controllers. Rather, QED alleges that the combined references fail to suggest the use of a single portable controller in conjunction with multiple dedicated bladder pumps. More specifically, QED argues that the otherwise portable and detachable IEA controller is always matched one-for-one with a single portable pump. Again, we disagree.
 
 
 21
 The Board found that IEA illustrated a controller having "quick-disconnect fittings" and being "clearly portable and ... inherently capable of being moved from well to well." Ex parte QED at 8. Admittedly, the IEA illustration is far from clear. However, the accompanying IEA price schedule offers the control module as a separate and distinct component from the sampling pump and the conduit also listed on the schedule. Furthermore, QED's argument again ignores the alternative approach suggested in IEA of dedicating the sampling equipment to individual wells. In view of the IEA reference as a whole, we find no error in the conclusion that the prior art suggests to one of ordinary skill in the art use of a portable controller in sampling multiple wells having dedicated inground components.
 
 
 22
 With respect to the more specifically recited wellhead assembly in claim 4, the Board additionally found that the conduit connections through the permanently installed wellhead "would also be apparent to one of ordinary skill in the art." Ex parte QED at 9. We find no error in the Board's findings that placing conduit connections through the permanently installed wellhead logically and obviously follows from the permanent installation of the inground components. In re Sovish, 769 F.2d 738, 226 USPQ 771 (Fed.Cir.1985).
 
 
 23
 In addition to the cited references, the Board also considered "voluminous evidence of record in the form of deposition testimony, trial testimony and affidavits of persons skilled in the art." Ex parte QED at 10. QED contends that the Board affirmed the examiner's rejection of claims 1-4 "solely" on the cited references. Some language in the Board's decision suggests this conclusion. However, other language in the decision makes it clear that the Board considered the totality of the record before it, including the "testimonial" evidence. In fact, the Board specifically noted portions of the testimonial evidence which supported its decision on obviousness:
 
 
 24
 In our opinion, such [testimonial] evidence is extremely relevant in reaching a determination of obviousness under 35 U.S.C. § 103. The admissions against interest by the inventors, especially Mr. Bernardin and Mr. Mioduszewski, are extremely relevant. Both inventors in their trial testimony admit that it was common to dedicate other types of pumps to sampling wells, that portable controllers were well known, and that bladder pumps were well known.... [I]t appears to us that the only difference between what the inventors admit to be well known and the claimed subject matter is the dedication of a well-known bladder pump in a well-known sampling system. From the inventors['] own admissions, we are at a loss as to why the dedication of a well-known bladder pump would not have been obvious within the meaning of 35 U.S.C. § 103.
 
 
 25
 Ex parte QED, at 10-11. We view the above and similar statements by the Board as additional findings based on the testimonial evidence that one of ordinary skill in the art would have considered the subject matter of claims 1-4 obvious at the time the '060 patent was filed.
 
 
 26
 Finally, QED argues that the Board's decision is clearly erroneous because it failed to give serious consideration to QED's "arguments of commercial success." The Board is obligated to consider evidence of commercial success, not arguments. As noted in the Board's decision, QED's only "evidence" of commercial success is an affidavit stating that the "total sales of Well Wizard dedicated bladder pump systems ... exceed[ed] $10,000,000 through 1989." This statement standing alone can not be considered evidence of commercial success. Without further evidence, this court can not presume that the commercial product referenced in the affidavit embodies the claimed invention, or that the gross sales figure is attributable to the merits of the claimed invention, rather than "other economic and commercial factors unrelated to the technical quality of the patented subject matter." Cable Elect. Prods., Inc. v. Genmark, Inc., 770 F.2d 1015, 1027, 226 USPQ 881, 888 (Fed.Cir.1985).
 
 
 27
 In sum, we conclude that the factual findings upon which the Board based its determination of obviousness are not clearly erroneous, and that the decision by the Board holding claims 1-4 of the '060 patent invalid for obviousness under 35 U.S.C. § 103 is correct as a matter of law.
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 Ex Parte QED Environmental Sys., Inc., No. 91-2086 (Bd.Pat.App. & Interf. Jan. 30, 1992) (hereinafter "Ex Parte QED "). The '288 application is a reissue application of U.S. Patent No. 4,585,060 (the '060 patent) issued to Messrs. Bernardin, Dickerson, and Mioduszewski. QED is assignee of the '060 patent
 
 
 [2]
 Related U.S. Patent No. 4,489,779 (the '779 patent) was also submitted for reissue/reexamination under the settlement agreement between QED and Sigma. Claims 1-3, 7-16, 19, and 23 of the '779 patent were also rejected by the Patent and Trademark Office and are the subject of Appeal No. 92-1307 before this court