PBI PERFORMANCE
PRODUCTS, INC.

v.

NORFAB CORPORATION.

Civil Action No. 05–4836.

United States District Court,
E.D. Pennsylvania.

Aug. 29, 2007.

Opinion Denying Reconsideration
Oct. 17, 2007.

Nancy D. Wasser, Law Offices of Nancy Wasser, Philadelphia, PA, Robert H. Hammer, III P.C., Charlotte, NC, for PBI Performance Products, Inc.

Anthony S. Volpe, John J. O'Malley, Michael F. Snyder, Volpe & Koenig P.C., Philadelphia, PA, for NorFab Corporation.

## MEMORANDUM

BARTLE, Chief Judge.

Plaintiff PBI Performance Products, Inc. ("PBI"), a developer of flame and thermal resistant fibers, has sued defendant NorFab Corporation ("NorFab") for: (1) infringement of its Patent No. 6,624,096 ("the '096 patent"), in violation of 35 U.S.C. § 271, et seq. in Count I; (2) unfair competition and false designation of origin and false and misleading representation in connection with use of a trademark and trade dress under 15 U.S.C. § 1125(a) in Count II; and (3) trademark and trade dress dilution in violation of 15 U.S.C. § 1125(c) in Count III. We previously granted summary judgment in favor of NorFab on Counts II and III of the complaint. *PBI Performance Prods. Inc. v. NorFab Corp.*, 2007 WL 81065, 2007 U.S. Dist. LEXIS 58689 (E.D.Pa. Jan. 5, 2007). Now before the court are the motion of NorFab for summary judgment in which it asserts that PBI's '096 patent is invalid and the cross-motion of PBI for partial summary judgment on the ground that its patent is valid. Each party contends that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law under Rule 56 of the Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### I.

The undisputed facts with respect to the '096 patent are as follows.

PBI is engaged in the research and development of flame and thermal resistant textile fabrics. It has developed a fabric which it believes to be particularly suitable for firefighters' turnout gear and has marketed that fabric to the fire service, garment manufacturers and mills. This fabric became known as PBI MATRIX. In August, 2001, PBI's predecessor in interest, CNA Holdings, Inc., filed a patent application for the PBI MATRIX fabric. On September 23, 2003, the United States Patent and Trademark Office ("USPTO") granted the application and issued the '096 patent for the invention titled "Textile Fabric for the Outer Shell of a Firefighter's Garment."

The '096 patent claims a textile fabric consisting of woven material from spun yarns and multi-filament yarns. The spun yarns are a blend of two staple fibers, the first of which is selected from the group PBI, PBO or melamine formaldehyde, and the second of which is an aramid polymer. The multi-filament yarn includes an aramid filament. The USPTO Examiner's May 20, 2003 Notice of Allowance and Notice of Allowability of the '096 patent stated that the novel features of the claimed invention were the weight ratio and the insert ratio of multi-filament yarns to spun yarns. The two independent claims of the patent recite that the yarns are to be inserted into each other at a weight ratio of 85:15 to 92:8 spun yarn to multi-filament yarn (Claim 1), or an insertion ratio of 1:5 to 1:20 multi-filament yarn to spun yarn, approximately nine spun yarns for every one multi-filament yarn (Claim 8).[1] Claims 2–7 depend from Claim 1 and Claims 9–15 depend from Claim 8.

The specification of the '096 patent describes some of the advances in the field of fabric for firefighters' garments that had already been made and patented. The fabric of the '096 patent included features

---

1. We assume, because PBI has not suggested otherwise, that the weight of the spun yarns and the multi-filament yarns used is the same.

that were disclosed in this "admitted prior art." Specifically, "inherently flame resistant spun yarn outer shell fabrics (in plain, twill, and rip-stop weaves) were known and also outer shell fabrics made with a combination of inherently flame resistant spun yarns and aramid filament yarns were known." Pl.'s Summ. J. Mem. at 20. Among these pre-existing fabrics, the '096 patent specification references at least one outer shell fabric woven from the combination of multi-filament yarns and inherently flame resistant spun yarns, and a number of fabrics containing aramid multi-filament yarns and fabrics containing inherently flame resistant spun yarns made from a mixture of PBI and aramid fibers.

Against that background of admitted prior art, the '096 patent describes the problem that was before its inventors. Those inventors were seeking to design a fabric for the outer shell of a firefighter's garment which was light weight but had better tear and abrasion resistance than the products that already existed. The inventors believed, and the USPTO Examiner agreed, that the use of multi-filament yarns and spun yarns in the ratios provided by the '096 patent would result in a fabric with less tear and abrasion resistance.

In 2003, at NorFab's initiative, NorFab and PBI discussed the possibility of forming a joint venture to make the PBI MATRIX fabric. These discussions never bore fruit. Sometime thereafter, NorFab began to sell a fabric similarly suitable for firefighter's turnout gear called OMNI–Elite®. PBI contends that OMNI–Elite® infringes the '096 patent.

PBI filed the instant complaint on September 9, 2005. On June 2, 2006, NorFab filed a request in the USPTO for *ex parte* reexamination of the '096 patent. On July 31, 2006, the undersigned placed this action in suspense and stayed further proceedings pending a decision by the USPTO whether to reexamine plaintiff's patent. The USPTO granted the request for reexamination on September 28, 2006 on the ground that there was a substantial new question of patentability going to each of the patent's 15 claims. By order dated January 5, 2007, we granted PBI's motion to reopen all proceedings in this court. On March 19, 2007, the USPTO mailed a non-final action in the reexamination proceeding recommending that the patent be rescinded.

## II.

Once a patent has issued, each of its claims is presumed valid. 35 U.S.C. § 282. When, as here, a party moves to invalidate a patent at summary judgment, that party must submit such clear and convincing evidence of the patent's invalidity that no reasonable jury could find otherwise. *U.S. Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed.Cir. 1996). The validity of a patent may be challenged by showing that the patent does not meet one of the original criteria for granting a patent. 35 U.S.C. § 282. NorFab argues that the '096 patent is invalid because it does not meet the conditions for patentability that the invention be novel and that its subject matter be non-obvious. In support of this contention, NorFab identifies prior art which the original patent examiner did not consider but which in its view renders the '096 patent invalid.

In particular, NorFab references the following as previously unconsidered prior art: (1) U.S. Patent Nos. 5,447,787 and 5,482,763 to Shaffer ("Shaffer '787" and "Shaffer '763," or collectively, "Shaffer patents"); (2) U.S. Patent No. 6,562,741 to Lilani ("Lilani '741"); (3) U.S. Patent No. 4,985,485 to Montgomery ("Montgomery '485"); and (4) the "Wellington Sears Handbook of Industrial Textiles" ("the

Wellington Sears treatise"). We will describe each of these in turn.

Shaffer patents '787 and '763 each describe a light-weight, tear-resistant fabric where the background yarns are spun yarns, and the reinforcing yarns are preferably a meta-aramid reinforcing yarn. The fabric is woven in a rip-stop configuration whereby the reinforcing yarn is inserted into the background fabric in both the vertical and horizontal directions. The meta-aramid reinforcing yarns make up from 3 to 15% of the spun yarns in the background fiber. The illustrations in the Shaffer patents show the ratio of reinforcing yarns to background yarns as 1:9. The specifications of the Shaffer patents each provide that the fabric described "can be used for many purposes including, but not exclusively, tents, tarps, awnings, canopies, marine coverings and banners."

Lilani '741 is cited by NorFab as an example of one of the many prior art woven fabrics which is made of thermal and heat resistant fibers. The fabric is particularly useful in firefighter outer shell garments. The patent teaches a method of dyeing such fabrics in a way that does not damage the fabrics' strength and tear characteristics or affect its thermal performance.

Montgomery '485 is directed to a "Corespun Yarn for Fire Resistant Safety Apparel." The patent characterizes the yarn as particularly useful in the production of fire resistant safety apparel. The yarn has three components: a core of high temperature resistant fibers; a core wrapper of low temperature resistant fibers surrounding and covering the core; and an outer sheath of low temperature resistant fibers surrounding and covering the core wrapper. The high temperature resistant fibers are aramid fibers or PBI fibers.

Finally, NorFab cites to the Wellington Sears Treatise to demonstrate that reinforced filament rip-stop weaves have long

been known in the prior art as a means of improving tear resistance in fabrics. This is also acknowledged in the prior art admitted in the '096 patent.

## III.

We begin by addressing Nor-Fab's contention that the '096 patent is invalid because its claims were obvious under 35 U.S.C. § 103. Section 103 states that:

> A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a). The determination of whether a patent claim would have been obvious in light of prior art is a legal conclusion based upon four factual inquiries:

> 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention and the prior art; and 4) secondary considerations of nonobviousness, which in case law is often said to include commercial success, long-felt but unresolved need, failure of others, copying, and unexpected results.

*Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662–63 (Fed.Cir.2000), *citing Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). When, as here, the party claiming obviousness relies on a combination of prior art references, it is not sufficient for that party to merely demonstrate that each individual claim of the patent at issue can be found somewhere in the prior art. *KSR Int'l Co. v. Teleflex Inc.*, —— U.S. ——, 127 S.Ct. 1727, 1741, 167 L.Ed.2d 705 (2007). Instead,

Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does.

*Id.*

NorFab maintains that the claims of the '096 patent are obvious under either Shaffer '787 or Shaffer '763 in view of: (1) the admitted prior art in the '096 patent specification; (2) Lilani '741; (3) Montgomery '485; and (4) the Wellington Sears treatise. It also asserts that motivation to combine the elements known in the prior art is expressly provided for by each of the Shaffer patents. *Id.*

■■ Before considering the question of obviousness, we must address PBI's threshold objection to our consideration of the Shaffer patents. PBI argues that because the Shaffer patents are not directed to ·the outer shell of firefighter's turnout gear, they are inappropriate for this court to consider. When a prior art reference is alleged to make the claimed invention obvious, the prior art must be analogous to the claimed invention to which it is being compared. *In re Wood*, 599 F.2d 1032, 1036 (C.C.P.A.1979). Analogous art is essentially that which a person having ordinary skill in the art would reasonably have consulted in solving the problem addressed by the claimed invention. *Id.* Here, PBI argues that a person having ordinary skill in the art would not have consulted the Shaffer patents because those patents do not relate to any of the following: outer shell fabric for firefighters' turnout gear, abrasion resistance, inherently flame resis-

tant spun yarns or the National Fire Protection Association ("NFPA") Standard 1971, which sets guidelines for firefighters' protective gear, including a requirement for tear strength. PBI maintains that a person having ordinary skill in the art would have disregarded any prior art that did not specifically refer to each of these concepts.[2]

The parties substantially agree as to the description of a person having ordinary skill in the art for the purposes of this patent. NorFab suggests that it is any individual who has a

basic understanding of weaving and fabric design, for example, an individual who has at least one (1) year experience in working with textile fabrics and fabric selections, who has earned an associate's degree in textile sciences (or equivalent), or a technician with approximately one (1) year of work experience in the textile industry.

Def.'s Summ. J. Mem. at 27. PBI agrees, although it would specify that this person's experience would be with the fabric used in the outer shell of firefighters' turn out gear rather than with textile fabric more generally. For present purposes, we will accept PBI's narrower formulation without deciding the question.

■ In addressing what pieces of prior art such a person having ordinary skill would have looked at in this case, we follow the framework set out by the Federal Circuit:

The determination that a reference is from a nonanalogous art is [ ] two-fold. First, we decide if the reference is within the field of the inventor's endeavor. If it is not, we proceed to determine whether the reference is reasonably per-

---

**2.** The court notes that the '096 patent does not itself refer to NFPA Standard 1971 as such, although it does display the results of the Standards' tear strength test as performed on the PBI MATRIX fabric.

tinent to the particular problem with which the inventor was involved.

*In re Wood,* 599 F.2d at 1036.

 We begin by looking at whether the subject of the Shaffer patents is in the same field of endeavor as the PBI MA-TRIX fabric. PBI argues that the '096 patent claims a textile fabric for the outer shell of a firefighter's garments and that only patents claiming such a fabric are in the same field of endeavor. NorFab disagrees. It maintains that the claims of the '096 patent are not limited to fabric used for firefighters' garments and submits that a patent directed to any "textile fabric" may properly be considered as prior art. The construction of patent claims is a question of law to be decided by the court. *Markman v. Westview Instruments,* 517 U.S. 370, 384, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

 The '096 patent claims reference a "textile fabric." They do not contain any express limitations of that term and do not limit the use of the fabric to the outer shell of firefighters' garments. When a claim term is disputed, courts are first to give that term the "ordinary and customary meaning" that a person having ordinary skill in the art would have. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312–13 (Fed. Cir.2005) (en banc). Here, it is clear that no person with ordinary skill in the art of any textile fabric would ever understand the generic term "textile fabric" to mean "fabric for the outer shell of firefighter's turnout gear." Indeed, PBI does not contend that "textile fabric" actually refers to

something other than its widely accepted meaning.

 Nonetheless, PBI urges the court to read such a limitation into the patent's claim based on the information provided in the patent's specification. We decline to do so. The Federal Circuit has recognized a "distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." *Phillips,* 415 F.3d at 1323. When, as here, the meaning of a claim is clear, we do not need the guidance of the specification to interpret it. *Id., see also Liebel–Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898 (Fed.Cir.2004). This is not a situation where the specification explicitly defines the inventor's idiosyncratic usage of the disputed term, or where the specification contains an express disclaimer, or disavowal, of claim scope by the inventor. *Phillips,* 415 F.3d at 1316. Instead, the specification of the '096 patent concludes by saying: "The present invention made [sic] be embodied in other forms without departing from the spirit and the central attributes thereof and, accordingly, reference should be made to the appended claims, rather than to the foregoing specification, as indicated [by] the scope of the invention."

To summarize, the '096 patent claims a "textile fabric" without limitation. The Shaffer patents for "Reinforced Fabric" and "Light Weight Tear Resistant Fabric," are within the same field of endeavor as the '096 patent.[3] We note in this regard that the Shaffer patents, like the patent at issue here, describe fabrics to be used

---

3. Moreover, we are instructed to consider prior art outside the field of endeavor if it addresses the same problem as the claimed invention. *In re Wood,* 599 F.2d at 1036. As noted above, the specific problem addressed in the '096 patent was to design a textile fabric for firefighter's turnout gear that was lightweight and had improved tear and abra-

sion resistance over existing fabrics. The Shaffer patents clearly address the same problem. They also concern a lightweight fabric that was tear and abrasion resistant. They would be considered analogous prior art even if we were to conclude that the Shaffer patents were not in the same field of endeavor as the '096 patent.

outdoors and under potentially harsh and intense conditions. Thus, a person having ordinary skill in the art would reasonably have consulted the Shaffer patents as being analogous prior art within the same field of endeavor, and we will consider them in our analysis of obviousness under 35 U.S.C. § 103.

Having disposed of PBI's threshold objection to our consideration of the Shaffer patents, we turn to NorFab's arguments that the claims of the '096 patent are obvious under either Shaffer '787 or Shaffer '763 in view of: (1) the admitted prior art in the '096 patent specification; (2) Lilani '741; (3) Montgomery '485; and (4) the Wellington Sears treatise. We are to consider: 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention and the prior art; and 4) secondary considerations of nonobviousness. *Ruiz*, 234 F.3d at 662–63.

We begin by considering the combination of the Shaffer patents and the prior art admitted in the '096 patent. As we have previously noted, the admitted prior art discloses fabrics for the outer shell for firefighters' turnout gear which were woven from inherently flame resistant spun yarns in plain, twill or rip-stop weaves. This includes at least one outer shell fabric woven from the combination of multi-filament yarns and inherently flame resistant spun yarns. Also disclosed by the admitted prior art in the '096 patent are fabrics containing aramid multi-filament yarns and fabrics containing inherently flame resistant spun yarns made from a mixture of PBI and aramid fibers. The Shaffer patents, described in more detail above, are each directed to a light-weight, tear-resistant fabric for outdoor use achieved by using a woven background of spun yarns and inserting multi-filament aramid yarns at a lower percentage. The insertion of the multi-filament aramid yarns is at every

tenth end and pick, falling into a 1:9 ratio of multi-filament to spun yarns.

Next, we turn to the differences between the claimed invention and the prior art as just described. PBI's intention in creating the fabric of the '096 patent was to improve the tear– and abrasion-resistance of the existing fabrics used for firefighters' turnout gear. PBI claims to have done this by creating a fabric for the outer shell of firefighters' turnout gear that included a woven fabric of: (1) inherently flame resistant spun yarns having a PBI, PBO or melamine formaldehyde polymer and an aramid polymer; and (2) aramid multi-filament yarns; (3) inserted at either a weight ratio of 85:15 to 92:8 spun yarn to multi-filament yarn, or an insertion ratio of 1:5 to 1:20 multi-filament yarn to spun yarn, with the preferred ratios being 90:10 and 1:9, respectively. The prior art admitted in the '096 patent teaches a woven textile fabric containing both the spun and multi-filament yarns used by PBI in the '096 patent. Indeed, the patent examiner recognized that the only feature of the '096 patent which was not found in the prior art was the claimed weight ratio and insert ratio of the multi-filament to the spun yarns. Both Shaffer '787 and Shaffer '763 teach a woven textile fabric where a background fabric is inserted with multi-filament aramid fibers in a ratio of 1:9 multi-filament aramid yarns to spun yarns. This ratio falls squarely within that claimed in the '096 patent, and indeed, is the exact embodiment of the preferred ratio as stated in the '096 patent's specification. In an attached appendix, we provide claim charts created by NorFab, which provide a detailed side-by-side comparison of the claims of the '096 patent and the prior art. These charts confirm that each claim of the '096 patent can be found in either the Shaffer patents or the admitted prior art.

As explained recently by the Supreme Court, "when a patent simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." *KSR*, 127 S.Ct. at 1740, *citing Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976) (internal quotations omitted). It is plain that a combination of the prior art admitted in the '096 patent and either of the two Shaffer patents would make the fabric taught in the '096 patent obvious. Essentially, the fabric of the '096 patent uses the weave construction described in the Shaffer patents but substitutes inherently flame resistant fibers which were well known in the firefighters' garment industry as the background fibers of the fabric.

Having concluded that each claim of the '096 patent is found elsewhere in the prior art, we also consider the level of ordinary skill in the art. *Ruiz*, 234 F.3d at 662–63. As noted above, we have adopted PBI's definition for the purposes of present analysis. According to PBI, a person having ordinary skill in the art is one having a basic understanding of weaving and fabric design with at least one year's experience working with the fabric used in the outer shell of firefighters' turn out gear. In the court's view, it is undisputed that it would be within the skill of such a person to apply the technology of the Shaffer patents to the prior art admitted in the '096 patent. We hold that the combination of the Shaffer patents with the admitted prior art renders the claims of the '096 patent obvious under 35 U.S.C. § 103.[4]

 PBI focuses its objection to our consideration of the Shaffer patents on the ground that there is no motivation to combine the Shaffer patents with the admitted prior art. When, as here, the party claiming obviousness relies on a combination of prior art references, that party should "identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR*, 127 S.Ct. at 1741. PBI points out that the Shaffer patents do not mention outer shell fabrics for firefighter's turnout gear, and the fabric claimed in the Shaffer patents is not inherently suitable for firefighters' gear. For these reasons, PBI asserts that there would be no reason for the inventors of the '096 patent to consider the Shaffer patents' teachings. We disagree and think that PBI looks too narrowly at the question of motivation to combine.

 In *KSR*, the Supreme Court addressed at length the requirement of a "teaching, suggestion or motivation" to combine existing prior art ("TSM test"). *Id.* The Supreme Court rejected the Federal Circuit's rigid application of the TSM test in favor of an expansive and flexible approach based on common sense. *Id.* at 1739. In performing its review, a court is not limited to considering "published articles and the explicit content of issued patents." *Id.* at 1741. Instead, "a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ" in determining whether such a person would have a motivation to combine teachings of prior art. *Id.*

 The Supreme Court explained in *KSR* that:

if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond

---

4. We do not reach, nor do we need to, Nor-Fab's arguments regarding the combination of the Shaffer patents with Lilani '741, Montgomery '485, or the Wellington Sears treatise.

his or her skill ... [A] court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions. *Id.* at 1740. Further, "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at 1742. This includes, but is not limited to, the particular problem the inventors of the patent in question were attempting to solve. *Id.*

We hold that there was clear motivation to combine the Shaffer patents with the admitted prior art of the '096 patent. First, by incorporating the fabric design described in the Shaffer patents into the pre-existing technology used for firefighters' turnout gear, the inventors of the '096 patent were merely incorporating a predictable use of prior art elements according to their established functions. Very simply, the techniques of the Shaffer patents were incorporated into the pre-existing fabrics used in firefighters' outerwear in the same manner as they were used in the Shaffer patents, and with the same benefits. Neither the admitted prior art nor the tear– and abrasion-reduction techniques of the Shaffer patents functioned any differently when combined in the '096 patent than they had functioned in their previously documented uses in durable outdoor products such as tents and marine coverings.

Second, motivation to combine the admitted prior art with the Shaffer patents arises from the fact that each of the Shaffer patents sought to solve the same problem as the inventors of the fabric in the '096 patent; namely, each sought to create a light-weight, tear-resistant fabric. The Shaffer patents, like the patent at issue, were concerned with the durability of fabric to be used outdoors and sometimes under severe conditions. The Shaffer pat-

ents' solution to the durability problem was the use of a woven background of spun yarns with multi-filament aramid yarns inserted at a lower percentage. Although PBI complains that the Shaffer patents did not use a background material with inherently fire-resistant threads, it is clear that the Shaffer patents explicitly motivate others to apply their basic advances in other types of fabric. Shaffer '787 provides that "the background fabric can be of any weave appropriate and practical for the contemplated use." Similarly, Shaffer '763 states that "the background fabric can be of any construction appropriate and practical for the contemplated use including fabrics that are knitted as well as woven."

Moreover, the improvements resulting from a combination of the Shaffer patents with the admitted prior art would have been easily recognizable to a person of ordinary skill in the art. As the Supreme Court said in *KSR,*

When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.

*KSR* at 1742. The problem the inventors of the '096 patent were investigating had already been identified and solved by the techniques described in the Shaffer patents. The '096 patent incorporated the multi-filament rip-stop yarns of Shaffer '787 or Shaffer '763 exactly as they were described in Shaffer. Like the adjustable pedal assembly at issue in *KSR,* this case involves only "the simple substitution of one known element for another or the mere application of a known technique to a

piece of prior art ready for the improvement."

### IV.

NorFab also contends that the '096 patent is invalid because it was anticipated pursuant to 35 U.S.C. § 102(b). That statute provides:

A person shall be entitled to a patent unless ... the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]

35 U.S.C. § 102. NorFab maintains that Claims 1–8 and 12–15 of the '096 patent were anticipated under either Shaffer '787 or Shaffer '763. Because we hold that the prior art renders each of the claims of the '096 invalid, we do not reach NorFab's arguments regarding anticipation.

### V.

In sum, we hold that the combination of the Shaffer patents with the admitted prior art renders the claims of the '096 patent obvious under 35 U.S.C. § 103, and that there existed a teaching, suggestion or motivation to combine those two elements by a person having ordinary skill in the art. The '096 patent is thus invalid.

### ORDER

AND NOW, this 29th day of August, 2007, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant NorFab Corporation for summary judgment invalidating U.S. Patent No. 6,624,096 (Docket No. 61) is GRANTED;

(2) the motion of plaintiff PBI Performance Products, Inc. for partial summary judgment upholding the validity of the '096 patent is (Docket No. 81) is DENIED; and

(3) judgment is entered in favor of defendant NorFab Corporation and against plaintiff PBI Performance Products, Inc. with respect to Count I of plaintiff's complaint.

### MEMORANDUM

Plaintiff PBI Performance Products, Inc. ("PBI") sued defendant NorFab Corporation ("NorFab") for patent infringement, unfair competition, and trademark and trade dress dilution. On August 2, 2007, this court entered summary judgment in favor of NorFab with respect to PBI's unfair competition and trademark and trade dress dilution counts. On August 29, 2007, we granted NorFab's motion for summary judgment on PBI's patent infringement count. We held that U.S. Patent No. 6,624,096 (the "'096 patent"), entitled "Textile Fabric for the Outer Shell of a Firefighter's Garment," was invalid under 35 U.S.C. § 103(a) as obvious in light of the prior art. Now before the court is PBI's motion for reconsideration of the August 29, 2007 Order.

■■■■ Our Court of Appeals has explained that the purpose of a motion for reconsideration under Rule 59(e) is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). A court may grant a motion for reconsideration or alter or amend a judgment if the party seeking reconsideration "shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999).

■■■■ Because of the courts' interest in the finality of judgments, "[m]otions for

... reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court." *Ciena Corp. v. Corvis Corp.,* 352 F.Supp.2d 526, 527 (D.Del.2005). A motion for reconsideration may not be used to give a litigant a "second bite at the apple." *See Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220, 1231 (3d Cir.1995). A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one. A motion for reconsideration "should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240 (D.Del.1990) (quoted in *Bhatnagar,* 52 F.3d at 1231). Therefore, it is "improper ... to ask the Court to rethink what [it] had already thought through—rightly or wrongly." *Glendon Energy Co. v. Bor. of Glendon,* 836 F.Supp. 1109, 1122 (E.D.Pa. 1993).

PBI's motion for reconsideration does not meet the standard required by our Court of Appeals. There has been no intervening change of controlling law and no new evidence since August 29. And much of PBI's argument for reconsideration is merely repetitious of arguments it has previously briefed for the court. The court will, however, take this opportunity to put a few issues to rest.

■ PBI first argues that this court erred in not "addressing the evidence raised by PBI in the Declaration of Clifton A. Perry," one of the named inventors of the '096 patent and a PBI employee ("Perry Declaration"). Pl.'s Mot. for Recons. at 2. PBI maintains that the Perry Declaration was evidence that a person having ordinary skill in the art would not have considered the Shaffer patents when designing outer shell fabrics for firefighter's turnout gear. Contrary to PBI's characterization, the Perry Declaration does not have any evidentiary value and cannot create a dispute of material fact on the question of whether a person having ordinary skill in the art would have considered the Shaffer patents. Perry states that "I do not believe that the designer of outer shell fabrics for firemen's turnout gear would have considered U.S. Patent No. 5482763 (Shaffer)." The declaration is predicated on his belief, not on his personal knowledge, as required under Rule 56(e) of the Federal Rules of Civil Procedure. It was clearly not manifest error for the court to decline to give any weight to the Perry Declaration.[1]

■ PBI next argues that the court impermissibly made factual inferences against PBI in its August 29, 2007 Memorandum. When deciding a motion for summary judgment, a court must make all reasonable inferences from the evidence in the light most favorable to the non-movant, here, PBI. *In re Flat Glass Antitrust Litig.,* 385 F.3d 350, 357 (3d Cir.2004). PBI contends that:

The Court improperly inferred the following against PBI: a) the '096 Patent claims reference any "textile fabric", b)

1. The court also notes that on June 26, 2007 NorFab filed a motion to strike the Perry Declaration on the grounds that it was not made from personal knowledge under Rule 56(e) of the Federal Rules of Civil Procedure and was incompetent under the Federal Rules of Evidence because it does not apply the claim language. In the alternative, NorFab asked for an extension of time for discovery as to Perry pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Because the August 29, 2007 decision granting summary judgment to NorFab made NorFab's motion moot, the court did not address that motion on its merits.

the Shaffer Patents are within the same field of endeavor as the '096 patent; c) it is undisputed that one of ordinary skill in the art would apply the technology of the Shaffer Patents to the prior art admitted in the '096 patent;[2] d) the improvements resulting from the combination of the Shaffer Patents with the admitted prior art of the '096 Patent were predictable; and e) the problems solved by the '096 Patent were the same problems describe in the Shaffer Patents.

Pl.'s Mot. for Recons. at 14. PBI is incorrect that these were factual inferences made by the court against it. To the contrary, they are conclusions of law, based on the undisputed evidence. As the court explained in its Memorandum, the determination of whether a patent claim would have been obvious in light of prior art is a legal conclusion, though it is based on factual inquiries. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed.Cir.2000). Having found the facts to be undisputed, it was entirely proper for the court to make the referenced legal conclusions.

 Finally, PBI contends that a decision of the Board of Patent Appeals and Interferences ("Board") with regard to a continuation-in-part application is new evidence that should be considered by the court. The decision was rendered on August 21, 2007, and PBI submitted it to this court on the morning of August 30, 2007, a day after this court granted NorFab's motion for summary judgment.

The Federal Circuit has held, and PBI acknowledges, that "The Examiner's decision, on an original or reissue application, is never binding on a court." *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549,

1555 (Fed.Cir.1985). Nonetheless, courts are advised to give credence to a Board determination when the prior art before the court and the Board are "much the same." *In re Laughlin Prods., Inc., Patent Litig.*, 265 F.Supp.2d 525, 529 (E.D.Pa. 2003). Here the '096 patent was not the subject of the Board's decision. Additionally, in its obviousness determination, the Board's decision only refers to U.S. Patent No. 5,928,971 (the "Ellis patent") and does not reference any of the other prior art considered by this court in its August 29, 2007 Memorandum. Thus, the Board decision submitted by PBI is of no evidentiary or precedential value under the present circumstances.

Because we find that the high hurdle for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure has not been met, PBI's motion for reconsideration of this court's Order of August 29, 2007 will be denied.

## ORDER

AND NOW, this 17th day of October, 2007, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of plaintiff PBI Performance Products, Inc. for reconsideration of this court's August 29, 2007 Order is DENIED.

---

2. PBI mis-characterizes this portion of the court's opinion. The court did not state that "one having ordinary skill in the art *would apply* the technology of the Shaffer Patents . . . ." Rather, the court stated that "[I]t is

undisputed *that it would be within the skill* of such a person to apply the technology of the Shaffer patents . . . ." 2007 WL 2464507 at *7 (E.D.Pa. Aug. 29, 2007).